**STATE of Missouri, Respondent,**

v.

**Robert WRAGG, Appellant.**

No. 51206.

Supreme Court of Missouri,

Division No. 1.

Nov. 8, 1965.

 

Norman H. Anderson, Atty. Gen., Jefferson City, Seldon M. Jones, Special Asst. Atty. Gen., Kansas City, for respondent.

J. C. Kretschmer, Kirkwood, for appellant.

HOUSER, Commissioner.

Robert Wragg, convicted of burglary in the second degree and stealing, §§ 560.070 and 560.156, V.A.M.S., and of two previous felonies under § 556.280, V.A.M.S., was sentenced to be committed to the department of corrections for 4 years. He has appealed from the judgment of conviction.

At 2 p. m. on Sunday, June 7, 1964 police officers received radio-dispatched calls to answer an alarm at Comet Tool & Die Company at 3560 Chouteau Avenue in St. Louis. Officer Strode proceeded immediately to the address, observed a window partially open on the south side of the building, stopped the police car and walked up to the window. Looking in he observed a Negro male, 30 to 40 feet north of him, running west through the building. The officer yelled at him to stop but he kept running. The officer entered the building through the open window and ran to the center aisle, where he saw the man starting to leave the building through a window on the west side of the building. The man was wearing a light-colored shirt and dark-colored pants. The officer again hollered at him to stop. He did not stop. The officer fired two shots at him, which missed. The officer ran up to the window but by then the man was out of sight. The officer then observed an electric saw, later identified as Exhibit A, the property of Comet, lying on the driveway. The officer picked up the saw and brought it back into the building. The areaway immediately outside the building adjacent to the escape window is completely enclosed by a cyclone fence 6–8 feet high with two strands of barbed wire at the top. A description of the man (Negro male, approximately five feet nine inches tall, wearing light-colored shirt and dark pants) was broadcast on police radio. Two detec-

tives patrolling the area received the description of the wanted man over the radio. They went west on Chouteau from Jefferson and on reaching 3325 Chouteau they observed a Negro male, the defendant, who answered the radio description. Defendant was sweating unusually. His shirt was soaked with perspiration, as if he had been running. He had several scratches and a jagged cut on his arm. The cut appeared to be ripped open, more of a tear than a gash. These lacerations were fresh and bleeding. Since he fitted the general description of the man wanted for burglary the officers placed him under arrest and took him to the Comet building. The officers brought defendant to the Comet building some 10 to 20 minutes after his description was broadcast. The officers removed his shoes, in which aluminum chips were imbedded. At the place in the factory where entry to the building had been forced there was a grinding machine, where fresh grinding had been going on. The window was broken. The table and floor were completely covered with aluminum chips. The subject was taken to a police station, where his light blue print pullover-type sport shirt and his dark grey trousers were removed. The shirt had a tear on the sleeve and a tear in the front. No tears were found in the trousers. He was supplied with hospital clothing and taken to the hospital to have the lacerations on his arm examined.

Defendant's shoes, shirt and trousers, and samples of the aluminum chips picked up on the floor in the area of the grinding machine were tested and analyzed in the police department laboratory. Debris removed from the trousers and shirt was examined under the microscope. It contained metallic shavings and fragments. Aluminum particles were found imbedded in the loafer-type shoes. A spectograph comparison of the metal removed from the shoes with the metal chips indicated that the objects examined consisted mainly of aluminum of the same chemical composition as the metal fragments. The electric saw was examined for fingerprints. No fingerprints could be lifted because the surface of the saw had an oily film on it. Officer Strode could not identify defendant as the man whom he saw in the building, because the building was very dimly lit and when the subject left by the window his back was toward the officer. Nor could the officer observe whether the man was carrying the saw as he went out the window.

At midnight on Friday, June 5, employee Klump locked all doors and windows of the Comet building and turned on the alarm system. Klump saw the Black and Decker electric saw the night of June 6, just inside the door on the floor of the shop office.

Defendant through his counsel relies upon three points on this appeal.

He first contends that the court erred "in admitting illegally obtained evidence over the objection of the defendant." This of necessity refers to the admission in evidence of the trousers, shirt and shoes which were taken from him when arrested and the particles of metal found on and imbedded in these articles. When these exhibits were identified defendant did not object. When they were offered in evidence the court asked counsel for defendant if he had any objection. Counsel answered that he had *already* objected to them but that his objection had been overruled. (Counsel was in error, for there had been no previous objection.) Counsel then indicated that he wished to renew his objections and said: "Well, I am objecting to them at this time again." He assigned no reason for his objection. Such failure has been held alone sufficient to justify overruling an objection, State v. Washington, Mo.Sup., 368 S.W.2d 439, 443 [5], but we prefer to base our conclusion that there was no error in admitting this evidence upon other and stronger grounds.

■ In our judgment there was no error in overruling the objection and in admitting these articles in evidence for the reason that they were seized as a result of

a lawful search incident to a lawful arrest, notwithstanding the arrest was made without a warrant. Officers may arrest without a warrant if they have reasonable cause to believe that the person arrested is guilty of a recent felony. State v. Phelps, Mo. Sup., 384 S.W.2d 616, 619. In this case the officers had received information by police radio that a burglary had occurred and they knew where it occurred (3560 Chouteau Avenue). They were also given a description of the man wanted (Negro male, wearing dark trousers, light shirt). They immediately drove to the vicinity and within a matter of 3 or 4 minutes after receiving the information they observed a Negro male fitting the general description of the wanted person, going east, in the second block from the place of the burglary. The man's shirt was soaked with perspiration "as if he had been running." The man went into the rest room of a filling station at 3325 Chouteau Avenue. When he came out of the filling station the officers stopped him. They noticed that he had several scratches on his arm—a fresh cut—and that his shirt sleeve was ripped. This combination of circumstances gave the officers reasonable cause to believe that this person committed the burglary at Comet—justified more than mere suspicion. In arresting defendant under these circumstances the officers did not act arbitrarily but exercised a reasonable discretion and demonstrated apparent good faith.

Defendant places sole reliance upon Gatlin v. United States, 117 U.S.App.D.C. 123, 326 F.2d 666. In that case the arrest of an intoxicated Negro one and one-half hours after the burglary, at an unspecified distance from the scene of the crime, largely because he happened to be wearing a trench coat, was held to be an arrest without probable cause. There was nothing shown indicating that he had been running or that he had scratched his body in trying to effect an escape. The differing elements of time and distance of the arrest from the time and place of the crime and the differing physical conditions of the two persons arrested differentiate the cases on the facts.

"When a person has been lawfully arrested officers may take from him articles of evidentiary value without violating his constitutional guaranties against unreasonable searches and seizures." State v. Phelps, supra, 384 S.W.2d, l. c. 619, and authorities there cited. In State v. Menard, Mo.Sup., 331 S.W.2d 521, as in this case, the proof of burglary rested largely on microscopic comparison of materials found on defendant's clothing at the time of his arrest and materials taken from the burglarized premises. In that case defendant's clothes were removed at a police station and forwarded to the police laboratory. The court rejected defendant's claim of error in admitting evidence of the specimens taken from defendant's clothing and that the search of the clothing and seizure of those particles was not unreasonable under constitutional provisions. We find no error in admitting the evidence in the case under review, holding as we do that these articles were seized as a result of a lawful search incident to a lawful arrest.

█ Had the arrest been unlawful the evidence seized, which was otherwise competent and material, would not have been inadmissible in evidence since there was no timely pretrial motion to suppress. State v. Garrison, Mo.Sup., 305 S.W.2d 447, 451 [6].

█ Defendant's second point is that "the verdict is against the weight of the evidence." It is no longer necessary to cite authority for the proposition that this point is too general to preserve anything for appellate review.

Defendant's third point is that "the court erred in overruling defendant's Motion to Dismiss at the close of the State's case and at the end of the whole case, in conformity with the findings in Gatlin vs. U. S. [117 U.S.App.D.C. 123], 326 Fed.2nd, page 666." If we correctly understand the contention under this point defendant is claiming that

the evidence obtained from the defendant's person was inadmissible as the fruit of an illegal arrest without warrant and that without this evidence the state failed to make a case, as a result of which the judgment should be reversed. What we have said under the first point indicates that the evidence was properly admitted as the fruit of a lawful arrest but in any event defendant is in no position to complain because, as indicated, he did not make a pretrial motion to suppress and did not make a sufficient and proper objection to the introduction of this evidence.

The information, verdict, judgment and sentence on the record before us are proper in form and substance. Criminal Rule 28.02.

The judgment is affirmed.

WELBORN and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.