**STATE of Missouri, Respondent,**

v.

**Carl Mason CRAIG, Appellant.**

No. 51823.

Supreme Court of Missouri,
Division No. 1.

Sept. 12, 1966.

Rehearing Denied Oct. 10, 1966.

Norman H. Anderson, Atty. Gen., Jefferson City, Claude W. McElwee, Jr., Sp. Asst. Atty. Gen., St. Louis, for respondent.

Jerry D. Mee, Springfield, for defendant-appellant.

HOUSER, Commissioner.

Carl Mason Craig, charged with and convicted by a jury of second degree burglary, § 560.070, V.A.M.S., and sentenced under the Habitual Criminal Act to five years in the custody of the department of corrections, has appealed.

Appellant's first point, that the court erred in submitting the case to the jury for failure of the state to make any substantial proof of appellant's presence at the scene of the burglary, requires a review of the evidence. The state introduced the following evidence: At the close of business on July 26, 1965 Gerald Puchta, owner of South Street Market, a grocery and tobacco store in Springfield, swept the floor and about 7 p. m. secured the doors and windows, locked up and left for the night. Around 11:30 p. m. Donald Casada, who lived in a nearby apartment, heard glass breaking. He left his apartment to investigate, saw a man who he thought was wearing a striped shirt crouched over in front of the store, stooped over like he was picking up something, at or near the front door. A 1955 Chevrolet, color "white-over-green, green body," was sitting in front of the store, close to the curb. The lights were on inside the market. A phone booth at the southeast corner of the store was lighted, and there was a street light. Casada jumped in his car which was fairly close and drove by the Chevrolet in an attempt to get the license tag number. His car came within 3 or 4 feet of the Chevrolet. He noticed a blonde woman with long hair sitting under the steering wheel. Casada drove three driveways beyond the Chevrolet, stopped, wrote down the license number, make, model and color of the car, then turned around, came back and parked his car. As he was walking towards the store to check the license to make certain that he got the right number the people at the store (he thought there were three persons, but was not "real sure") drove away, to the south, in the Chevrolet. On the left side and middle of the trunk of the Chevrolet there was a faded-out spot that you could see "real good." Casada gave the police the information he had, stating that he was not sure of what he had written down.

Jackie Lane, a 15-year-old girl who lived in the same neighborhood, heard a car drive up, heard a crash "like something had broken," went to the window and saw two men standing at the door of the South Street Market, breaking in. There was a "white

and dark" colored car parked in front of the store. A third person was in the driver's seat. She could not see whether it was a man or a woman. One of the men was wearing a white shirt and dark slacks. It was too dark to see what the other man was wearing. Jackie went to a neighbor and asked her to call the police.

Police converged at the scene from every direction. Within a few minutes Casada and Jackie were asked to go to the police station. The police thought they had the people and wanted them to attempt to make an identification. At the police station they saw three people who had just been arrested, appellant Craig, Maude Preston and James Robinson. Neither was able to identify appellant as one of the men who had broken into the store. They were shown a 1955 Chevrolet, but it was colored white-over-blue. At the police station neither would identify the car as that used in the burglary, but after police drove the car to the market and parked it under the prevailing light at that place, which was different from the light at the station, Casada identified the car as that used in the burglary. The car was painted a kind of metallic blue. It changed colors under the different shades of light, and appeared green in the light at the market. The car exhibited at the police station had the same identical markings (the worn spot on the trunk) as the one used by the burglars.

When police arrived at the store at 11:45 p. m. the glass in the front door was broken out and scattered over the sidewalk. A cigarette display case was sitting out in front. Articles, including "a lot of" cigarettes, were strewn about on the sidewalk. Casada gave the police lieutenant what he thought was the number of the license plate, H 20295, together with the make and model of the car, a white and green 6-cylinder '55 Chevrolet sedan, occupied by three people, two males and one female. This information was conveyed to the dispatcher at police headquarters and broadcast. The owner, notified, arrived on the scene and he and the police entered the store, found

some food thrown on the floor, a crumpled up package of Pall Mall cigarettes, and that no less than forty-two cartons of cigarettes were missing. Puchta purchased all his cigarettes from Anderson-Parks, distributors, whose number, 27540, was stamped on each package. A police sergeant found a cigarette lighter on the floor of the store, against the wall, just inside the front door. It was a Monaco brand, windproof lighter, made in Japan. At the time Puchta locked up the store the lighter and the crumpled up package of cigarettes were not on the floor in the store.

Police Officer Halsey received information by radio from the dispatcher that a burglary had occurred and a description of the vehicle and subjects occupying the vehicle was broadcast (white-over-green '55 Chevrolet, Missouri license H–20295; person who broke in described as lean and dark hair, wearing a shirt with stripes in it; a heavy-set female and a third person, not described). Halsey saw a car matching this description on the Consumers Service Station lot at College just west of Nettleton. Consumers Service Station is 19 or 20 blocks from South Street Market. The car, white-over-faded blue, carried Missouri license number HT–0495. A man and a woman occupied the front seat and a man was sitting in the back seat. The car had a flat tire and an attempt was being made to get the station attendant to fix it when the officer drove up. The officer observed that the man in front was wearing a striped shirt, was dark-headed, slender and the female was stocky. The officer arrested the trio. This occurred about 45 minutes after the information came over the radio. The officer searched the car and in the front seat, found, among other things, a package of cigarettes. The trio consisted of Carl Mason Craig, Maude Preston and James Robinson. Craig was told that he was arrested for burglary and larceny at the market at South and Madison (Puchta's store). Another officer searched Craig at the time he was arrested, and found a package of Pall Malls and a package of L & M

cigarettes in his pocket. They bore the number 27540. The officers took the three arrested persons to the police station and booked them. The booking room was 8 by 12 feet and contained a 3 x 5 desk, a bench and some chairs. Defendant's personal effects, including a cigarette lighter, were placed on the table in front of him. The officer who found the lighter in the store gave it to Officer Jared, who laid it on the table about a foot from Craig's effects. Calling defendant's attention to the lighter found in the store, the officer asked him if the lighter was his and defendant said the lighter was his, said the lighter was broken at the hinge; that the bottom of the hinge pulled up and the lid came off of it; that he had this lighter around the house and after he lost the case of his other lighter he had picked this lighter up to use. He further asked if the police were accusing him of stealing the lighter.

■ Defendant's light, striped shirt fit the witnesses' description of the shirt they saw being worn by one of the men while in the act of committing the burglary. Defendant was arrested less than an hour after the burglary, 20 blocks from the scene, in an automobile identified by two eyewitnesses as the car used in the burglary. The first letter, third, fifth and sixth digits of the license number on the car were the same as the number hurriedly written down by Casada at the scene of the crime. Defendant was one of three persons occupying the automobile—two men and a woman—and the burglars were three, two men and a woman. The woman was "stocky," corresponding to Casada's description of the woman at the scene as "heavy set." Cigarettes found on defendant's person at the time of arrest and in the front seat of the car he was occupying bore the same distributor stamp number carried on all cigarettes stocked at South Street Market. A lighter, found in the burglarized store, was identified by defendant as his property. The foregoing constitutes strong circumstantial evidence that defendant was present at the scene and participated in the commission of the burglary and was sufficient to submit the question to the jury.

Appellant's second point is that the court erred in giving Instruction No. 4, which follows:

"The Court instructs the jury that evidence is of two kinds, direct and circumstantial.

"Direct evidence is where a witness testified directly of his own knowledge of the main fact or facts to be proven.

"Circumstantial evidence is proof of certain facts and circumstances in a given case from which the jury may infer other and connected facts which usually and reasonably follow, according to the common experience of mankind.

"Crimes may be proven by circumstantial evidence, as well as by direct testimony of eye-witnesses, but to justify conviction, the facts and circumstances in evidence must be consistent with each other and with the guilt of the defendant, and inconsistent with any reasonable theory of the innocence of the defendant."

■ Appellant objects that No. 4 is too broad, is confusing, attempts to instruct on two areas of the law in a single sentence, infers that there was direct evidence of defendant's complicity whereas the state was relying wholly on circumstantial evidence, permits the jury to find defendant guilty where a mere suspicion of guilt arose from the evidence, gives the jury a roving commission to find guilt on conjecture or surmise, and fails to relate the burden of proof of the defendant's complicity with the instruction on circumstantial evidence. The instruction is not subject to these criticisms. The use of this instruction was entirely appropriate in this case founded wholly upon circumstantial evidence. It conforms to the rule laid down in State v. Armstrong, Mo.Sup., 361 S.W.2d 811, 818, with respect to terminology, and it would have been error to refuse it. State v. Regazzi, Mo.Sup., 379 S.W.2d 575 [3].

Appellant's third point is that the court erred by failing to give a cautionary instruction on the jury's duty to carefully consider defendant's incriminating statements made outside of court. This subject was not a part of the law of the case, on which the court had a duty to instruct, but was a collateral matter. Defendant made no request for a cautionary instruction on this subject. Under these circumstances we cannot convict the trial court of error in this respect. State v. Daugherty, Mo. Sup., 320 S.W.2d 586, 591.

Appellant's fourth point is that the court erred in overruling defendant's motion to suppress evidence, the product of an alleged illegal search and seizure, and in admitting over defendant's objections evidence that was the product of an illegal arrest. The evidence in question was two packages of cigarettes taken from the pockets of defendant's shirt, two packages of cigarettes found in the front seat of the car, and defendant's striped shirt. The motion to suppress was based upon two grounds: that the searches and seizures were made without warrant or other lawful authority and not as a result of a lawful arrest.

The motion to suppress was properly overruled. The arrest was lawful and the articles were seized as a result of a lawful search incident to a lawful arrest. No warrant was necessary. Police officers may arrest without a warrant if they have reasonable cause to believe that the person arrested is guilty of a recent felony. State v. Wragg, Mo.Sup., 395 S.W.2d 196; State v. Phelps, Mo.Sup., 384 S.W.2d 616, 619. The searching and arresting officers had reasonable cause to believe that this defendant, and his two companions, were guilty of burglary and larceny of South Street Market. They had received information from the police radio dispatcher that a burglary was in progress at South Street Market, and that people were carrying things from the store. Later they were informed that the burglars had left the scene in an automobile. They had information as to the number of participants, two men and a rather large female, a partial description of the subjects involved, a description of the clothing of one of the men, and a description of the make, model and color of the automobile. A Missouri license number which it was obvious to the officers was not a correct Missouri license number was given. Within 45 minutes three people answering the description were found in a parked automobile fitting the description, parked in a filling station 20 blocks from the scene of the crime. The arresting officer inquired of the filling station attendant how long they had been there and was informed they had been there about ten minutes. These facts gave the officers reasonable cause to believe that this was the trio which had committed the burglary at South Side Market and under these circumstances the arrests were made not on suspicion merely but in the exercise of a reasonable discretion, in apparent good faith.

The fifth point raised is that the court erred in overruling defendant's motion to suppress the incriminating statement defendant made at the time of booking (that the lighter found in the store belonged to defendant) "when he had not been advised of his state and federal constitutional rights by an attorney at this critical stage and being indigent could not have had appointed counsel until a later period * * * thereby depriving him of equal protection of the law and due process."

The motion to suppress alleged that the statements were secured by the use of coercion, fraud and duress. Counsel points out that the three persons arrested were in a small room with three or four officers present, and says that "there was an element of misleading or fraudulent conduct in inducing defendant to discuss a lighter." We find no basis for this statement. There is no evidence of coercion, fraud and duress and the charge is not seriously urged.

The motion to suppress further alleged that defendant was not effectively advised of his right to confer with an attorney be-

fore making any statement or of his absolute right to remain silent during interrogation. The thrust of appellant's argument is directed to that portion of the motion. He claims that he was in need of counsel for guidance at the time of his booking following his arrest, but was indigent and unable to employ counsel, and that the exclusionary rule of Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246, and Spano v. New York, 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265, should be applied to the statements made at the time of booking. Appellant asserts that an offer to allow him an opportunity to make a telephone call to an attorney would be an "empty gesture when he was unable to pay an attorney." In effect appellant wants this court to rule that admissions are to be considered involuntary if made outside the presence of counsel.

■ This case was tried before June 13, 1966, and therefore the rules prescribed in Miranda v. State of Arizona, Nos. 759, 760, 761 and 584, October Term 1965, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, are not applicable. Those rules are not to be applied retroactively. Johnson v. State of New Jersey, October Term, 1965, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882. The test to be applied in this case is whether the totality of circumstances deprived defendant of a free choice to admit, to deny, to refuse to answer, and whether there was physical or psychological coercion of such a degree that defendant's will was overborne at the time he made the incriminating statement. State v. Beasley, 1965, Mo.Sup., 404 S.W.2d 689.

■ The totality of circumstances indicates that appellant had a free choice and that his statement was purely voluntary. Both at the time of arrest and in the booking room defendant and the other two persons arrested were told that they were arrested in connection with and were suspects in a burglary of the South Side Market. When booked he and the other two persons arrested were told that they had a right to remain silent and that "anything they said in regard to the events for which they had been arrested could be used against them." One of the three persons arrested said "they" wanted to call an attorney. The officers did not remember which one made that request, but all three were present at the time. They were told "that they could contact an attorney, and were asked who they wanted to get in touch with on the telephone." There was a telephone available in the booking room and they were so informed but all three refused to make use of the telephone or contact an attorney, and thereafter none of them made any further request for an attorney. It was after their right to remain silent and to consult with an attorney, and after the warning that what they said could be used against them, that the discussion concerning the cigarette lighter took place. There was no evidence or suggestion of any improprieties on the part of the officers during the interrogation. From the totality of circumstances we find that defendant's incriminating statement was voluntary; that appellant's constitutional rights were not violated but were fully protected, State v. Boykins, Mo.Sup., 399 S.W.2d 70; State v. Pughe, Mo.Sup., 1966, 403 S.W.2d 635; and that the court acted properly in overruling the motion to suppress and in admitting the incriminating admission in evidence.

■ Next, appellant complains of the exclusion of defendant's Exhibit 1, a photograph of the front door of the store, made in the daytime. Apparently it was taken on the front porch of Jackie Lane's house. She said it was a fair representation of the store from the porch on the night of the break-in, except that it doesn't show the window; that she could see the window. Appellant wanted to use it to demonstrate that because there was an automobile between her and the store she could not be sure how many persons were involved, two or three. The trial court, which is vested with some discretion in admitting or excluding photographs, State v. James, Mo.

Sup., 367 S.W.2d 606 [3], considered that the difference in the lighting between pictures taken in the daytime and in the nighttime made the photograph inadmissible. Furthermore, Jackie Lane did not say that she viewed the scene from the porch, but said that when she heard the crash she went to the *window* and made her observations. The record does not show the relation of the window and the porch. We cannot convict the trial court of an abuse of discretion in refusing the photograph under the circumstances.

Appellant's seventh and final point is a complaint that the state's attorney in final argument made improper remarks which had the effect of commenting on defendant's failure to testify. The assistant prosecuting attorney, commenting on the state's failure to find some 30 or 40 cartons of cigarettes, stated that only defendant Craig knows where they are; that some 30 minutes elapsed between the time of the burglary and the time of the arrest; that the jury had heard the state's witnesses, "And, by the way, it is uncontradicted testimony on the part of the state. Think about it. * * *" Appellant argues that there was no evidence that he knew anything at all about the break-in and that this argument "surely brought to the minds of the jury that Carl Mason Craig had not testified and therefore, violated the mandates of 546.270, V.A.M.S. to the prejudice of defendant." That a prosecutor's argument that the state's evidence was uncontradicted is not an improper comment on defendant's failure to testify has been ruled many times. State v. Willis, Mo.Sup., 328 S.W.2d 593, and authorities cited, 1.c. 595 [7]. The argument that only defendant knows where the cigarette cartons are was not a reference to defendant's failure to testify. In State v. Romprey, Mo.Sup., 339 S.W.2d 746, this Court ruled that a prosecutor's remark that "The defendant knows about things you don't know about" was proper and did not constitute a reference to defendant's failure to testify. This point is without merit.

Defendant was represented at the trial and on appeal by competent and diligent court-appointed counsel. Defendant had a fair trial. We find no error in this record. Examination of the matters required by Criminal Rule 28.02 reveals no error.

The judgment is affirmed.

WELBORN, C., not sitting.

HIGGINS, C., concurs.

PER CURIAM. The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

HOLMAN, P. J., HENLEY, J., and STORCKMAN, Alt. J., concur.

HYDE, J., not sitting.