**STATE of Missouri, Respondent,**

v.

**Michael Alvin THOMPSON, Appellant.**

No. 52958.

Supreme Court of Missouri,
Division 1.

March 11, 1968.

Norman H. Anderson, Atty. Gen., Jefferson City, Austin B. Speers, Sp. Asst. Atty. Gen., Kansas City, for respondent.

Daniel P. Reardon, Jr., St. Louis, for appellant.

WELBORN, Commissioner.

This is an appeal from a judgment of conviction for possession of narcotic drugs, with punishment, under the second offender act, of seven years' imprisonment.

On July 26, 1966, at around 9:30 in the evening, the appellant, Michael Alvin Thompson, was noticed by St. Louis police officers as he started his 1964 Oldsmobile convertible at the stop light at Delmar and Goodfellow. Because Thompson "squealed" his tires as he made a left turn from Goodfellow onto Delmar, the police officers, riding in a police car, pursued Thompson, with their red spotlight flashing. Thompson made a right turn into DeBaliviere Avenue, one block east of Goodfellow. The officers noticed Thompson throw a small package out of his auto after he turned onto DeBaliviere. Shortly after he did so, his auto came to a stop with the police vehicle behind it and one of the officers got out and told Thompson that he was under arrest for "improper starting." The other officer walked back some seventy feet to the vicinity of where Thompson had thrown the object from his auto and found a small envelope containing a substance which he believed was marijuana. The officer returned to where Thompson and the

other officer were at the automobile and Thompson was told that "he was going to be charged with the additional charge of possession of marijuana." Thompson was taken to a police station where he was booked on that charge. At the police station, his clothing was taken from him. Subsequent examination at the police laboratory of the shirt and trousers which Thompson wore revealed traces of marijuana.

After an information had been filed, charging Thompson with illegal possession of a narcotic drug, based upon the quantity of the contents of the package found in the street, Thompson filed a motion to suppress the use in evidence of marijuana in the hands of the police on the grounds that such evidence had been obtained in a search at a time when appellant had not been subject to a lawful arrest. A hearing was held on the motion, at which it was shown that, in addition to the marijuana found in the street, a search of Thompson's auto at the scene of his arrest had uncovered a quantity of the drug which was then in police hands. The judge who heard the motion to suppress concluded that there was no valid basis for an arrest of the appellant for "improper starting," there being no evidence that the start had endangered persons or property. The court held that the evidence obtained in the search of the vehicle should be suppressed, but that the contents of the package were not the result of any search incident to an arrest and overruled the motion as to that item.

When the case came to trial, the motion to suppress was renewed with respect to the defendant's clothing and the evidence obtained on analysis thereof. The motion was overruled by the trial court, apparently on the theory that at the time that defendant's clothing was taken he had been made the subject of a valid arrest for possession of marijuana and the taking of the clothing was a proper incident of such arrest.

At the trial the two police officers testified to the circumstances of the arrest.

They identified the package which they saw defendant throw from his auto and which was found by the police laboratory technician to contain 2.59 grams of "Cannabis Sativa, known as marijuana." The laboratory technician also testified that "microscopic examination of debris removed from the shirt pocket and the pants pockets showed the presence of marijuana."

The case was submitted on such evidence, the defendant electing to stand on a motion for acquittal at the close of the state's case. The jury returned a verdict of guilty. The court fixed the punishment at seven years' imprisonment. After motion for new trial had been overruled, this appeal followed.

The first assignment of error on this appeal relates to the court's failure to suppress the evidence found in the street and in defendant's clothing. Appellant contends that the arrest, search and seizure were illegal. The foundation of his complaint is the court's finding on the first submission of the motion to suppress that the arrest for "improper starting" was invalid because there had been no violation of the ordinance on which that violation was allegedly based. The appellant's theory is that, if such arrest was illegal, so was the pursuit which preceded it, and that, if the defendant did throw the package into the street, "he was forced to do so * * * because the police indulged in an illegal pursuit and arrest of the defendant."

■ Appellant cites no authority which supports, even remotely, the ingenious argument which he advances. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, is cited for the well-known proposition that illegally obtained evidence is excluded in state criminal proceedings by virtue of federal constitutional protections. The facts of Mapp are in no way comparable with this situation.

McNeely v. United States, CCA 8th, 353 F.2d 913, cited by the state, closely resembles the situation here presented. In McNeely, a policeman saw a suspicious

looking automobile at night. When the driver did not stop at the officer's order, the police car gave chase. During the pursuit, a kit of tools was jettisoned by a person sitting on the passenger side in the front seat. Eventually the vehicle was stopped and the occupants placed under arrest for littering. A short time later the jettisoned tools were found to be adapted for use in burglary and the defendants were arrested for possession of burglary tools. Subsequent investigation showed that the tools had been used in a post office burglary and the occupants of the auto were tried for that offense. McNeely, the driver, argued that only his passenger could have been guilty of littering and that therefore McNeely's arrest was illegal and the burglary tools could not be introduced in evidence against him. The court concluded that there would have been reasonable grounds for inclusion of McNeely in the littering arrest. However, the court also stated:

"Due to this additional discovery [of the jettisoned tools], we do not believe that the first arrest of McNeely a few minutes before, *regardless of its legality,* had any effect on the legality of this second arrest. The search and seizure of which McNeely complains did not take place until after this second, obviously valid, arrest on the charge of possession of burglary tools." (emphasis supplied) 353 F.2d 918 [12].

■■ We are of the opinion that appellant's arrest here for the marijuana stood on a sound basis, without regard for the validity of the "improper starting" arrest. As one of the officers went to appellant's auto and advised him of his arrest on that charge, the other went back and found the package in the street which he recognized as containing marijuana. He immediately returned to the presence of the appellant and told him that he would also be booked on the marijuana charge. Although there is no testimony that the officer stated explicitly that he placed the appellant under arrest on the marijuana charge, the state-

ment testified to was sufficient to advise appellant of that fact. See Brown v. United States, 125 U.S.App.D.C. 43, 365 F.2d 976, 979 [5].

The alleged "illegal pursuit" would not taint the discovery of the packet in the street. At the time that he threw away the package, the appellant would not have had any knowledge of the reason for the police signalling him to a stop. What he did is reaction to the police order and his reason therefor was wholly within the control and knowledge of the appellant. Tossing the package into the street was the product of the appellant's knowledge of matters with which the police were not then concerned. He cannot avoid responsibility on the grounds that it was the police who were at fault.

■ Appellant also argues that the arrest was based in part upon the marijuana found in the defendant's car and which the trial court suppressed. He contends that it is impossible to determine whether the arrest for marijuana possession was based solely upon the packet found in the street. However, the only evidence in the record is that defendant was placed under the second arrest after the police officer examined the contents of the packet found in the street. There is nothing to support the contention that such arrest followed a search of the defendant's automobile. The fact that the trial court suppressed the evidence obtained from the automobile does not, standing alone, show that the arrest was based upon such evidence as well as the packet in the street. The trial court's ruling was based solely upon his conclusion that the arrest for "improper starting" was illegal. There was no evidence before him of the time at which the auto was searched and he did not consider whether there had been a second arrest which might have afforded a proper basis for such search. We, therefore, do not consider that his ruling had any binding effect insofar as the validity of a second arrest is concerned.

■ The arrest having been legal, the seizure of appellant's clothing in connection therewith and its subsequent microscopic examination by the police laboratory personnel and the introduction into evidence of material thereby obtained was not prohibited. State v. Wragg, Mo.Sup., 395 S.W.2d 196, 198–199 [1–3]; State v. Menard, Mo.Sup., 331 S.W.2d 521, 525 [8, 9]. See Margeson v. United States, CA 1, 361 F.2d 327, cert. den. 385 U.S. 830, 87 S.Ct. 68, 17 L.Ed.2d 66.

The second point on this appeal urges that there was no evidence to support the verdict finding appellant guilty of the possession of a narcotic drug. The charge against the appellant was based upon § 195.-020, RSMo 1959, V.A.M.S., making unlawful the possession of "any narcotic drug." (§ 564.090, RSMo 1949, to which the state's brief refers, was repealed, Laws of Mo., 1953, p. 418, § 1.) The information charged the possession of "a narcotic drug, to-wit: 2.59 grams of the plant Cannabis Sativa, commonly called marijuana." The police chemist identified the material in the packet as "Cannabis Sativa, known as marijuana."

Instruction No. 1 called for the jury to find the defendant guilty if they found that he had "in his possession and under his control a certain quantity of a narcotic drug, to-wit: 2.59 grams of the plant Cannabis Sativa, commonly called marijuana, and if you further find that said drug was a narcotic drug, * * *." Appellant's contention is that there was no evidence presented to the jury that Cannabis Sativa is a narcotic drug, and therefore there was no evidence upon which the jury could base a finding on that issue.

■ We find no direct testimony to the effect that Cannabis Sativa is a narcotic drug. However, subparagraph (17) of § 195.010, RSMo 1959, V.A.M.S., defines "narcotic drugs" to mean, among other things, "cannabis." Subparagraph (5) of that section states: " 'Cannabis' includes all part of the plant Cannabis Sativa L. wheth-er growing or not;" etc. Appellant states that these definitions do not aid the state because there is no evidence that the material here in evidence was part of the plant "Cannabis Sativa L.", the only evidence being that it was from the plant "Cannabis Sativa." However, there is no doubt that "Cannabis Sativa L." and "Cannabis Sativa" are one and the same. The addition of the abbreviation "L." in § 195.-010(5) merely serves, for purpose of botannical classification, to identify the source of the recognized botannical name as the Swedish taxonomist, Carl von Linné, Vol. 22, The Encyclopedia Americana (1957 ed.), Plants and Plant Science, p. 154, § 11. Nomenclature, pp. 219–220. See 12 C.J.S. "Cannabis" p. 1111; State v. Romero, 74 N.M. 642, 397 P.2d 26. The law has included Cannabis Sativa as a narcotic drug. § 195.010(5) (17), supra. The requirement that the jury find it to be such is surplusage, in view of the statutory provisions above noted. See Massiate v. State, Tex.Cr.App., 365 S.W.2d 802, 803 [4]; State v. Weber, 221 La. 1093, 61 So.2d 883, 884 [2].

Appellant's next assignment of error relates to the closing argument of the prosecuting attorney. Appellant contends that the prosecutor was permitted to comment upon the failure of the defendant to testify. The entire argument is not in the transcript. However, the three references upon which the objection here is based are set out as follows:

(Prosecutor) "I don't understand the defense in this case; nowhere did Mr. Rankin explain how marijuana fragments could have gotten in his client's pants or shirt, if in fact the object recovered by the officers was marijuana."

■ The transcript shows that this argument was objected to on the grounds that it was "beyond the scope of the charge." No objection on the ground now urged was made and we do not consider the new ground raised for the first time on appeal.

■ The other two statements, to which objection was made on the ground here urged, were as follows:

"At the close of the State's case the defendant had an opportunity to introduce any evidence he had, at that time he had the right—" (objection).

With the exception of the fact that the prosecutor then was allowed to complete his statement, the argument here is practically identical with that found not objectionable on the grounds here urged in State v. Hodge, Mo.Sup., 399 S.W.2d 65, 67–68 [5]. The objection here is without merit.

■ The third portion of the argument which is the subject of claim of error in the statement by the prosecutor: "At that time, when we closed, there was no evidence at all to refute that evidence that the State had put on. We had two officers identify the evidence that the lab had. That's the State's case, and against that you have got nothing; absolutely nothing. And I say—" (objection). Argument to the effect that the state's evidence was uncontradicted, the essence of this argument, is not subject to the objection here raised. State v. Hayzlett, Mo.Sup., 265 S.W.2d 321, 324 [5, 6]; State v. Thomas, Mo.Sup., 393 S.W.2d 533, 537–538 [12]; State v. Kennedy, Mo.Sup., 396 S.W.2d 595, 598–599 [4, 5].

■ The appellant suggests that the three statements above in their "cumulative effect", (State v. Varner, Mo.Sup., 329 S.W.2d 623, 633 [18]) violated the appellant's constitutionally protected privilege to remain silent. We do not agree with this contention. The context of the first statement is incomplete and we would not relate it to the subsequent remarks. The last two statements apparently followed each other in the prosecutor's argument, with a fairly lengthy interruption in which defendant's counsel expressed his objections to the first portion. Possibly as a result of the objection, the prosecutor then somewhat tempered his remarks in the concluding portion

(see State v. Hodge, supra). We find no such cumulative effect here as would call for application of the rule set out in Varner, supra.

■ The last two objections on this appeal relate to Instruction No. 3 and to the admission into evidence of the container in which the police department had placed the packet of marijuana and the defendant's clothing. These matters were not preserved in the motion for new trial and therefore are not here available to appellant. S.Ct. Rule 27.20(a), V.A.M.R.; State v. Madden, Mo.Sup., 394 S.W.2d 317, 320 [2, 3]; State v. Meiers, Mo.Sup., 412 S.W.2d 478, 481 [6, 7].

Matters of record examined pursuant to S.Ct. Rule 28.02, V.A.M.R., are free from error.

The judgment is affirmed.

HOUSER and HIGGINS, CC., concur.

PER CURIAM.

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court. All of the Judges concur.