**STATE of Missouri, Respondent,**

v.

**Dewitt PATTERSON, Appellant.**

**No. 55641.**

Supreme Court of Missouri,
Division No. 2.

April 12, 1971.

Ronald M. Sokol, The Legal Aid and Defender Society of Greater Kansas City, Kansas City, for appellant; Paul T. Miller, Executive Director, Willard B. Bunch, Chief Defender, of counsel.

John C. Danforth, Atty. Gen., James M. Reed, Asst. Atty. Gen., Jefferson City, for respondent.

PRITCHARD, Commissioner.

For robbery with a dangerous and deadly weapon, a knife and a revolver, the jury found appellant guilty. It was alleged, proved and found by the court that appellant had a prior felony conviction, and the court subsequently sentenced him to twelve years imprisonment in the Department of Corrections.

The appeal presents two points. The first is that the in-court identification of appellant was tainted by his exhibition in a lineup before trial without assistance of counsel, in violation of his constitutional rights. The second is that Instruction No. 6 on the subjects of presumption of innocence and reasonable doubt was erroneous in that it invaded the province of the jury;

constituted a judicial comment on the evidence; established a burden of proof of innocence; and commented upon appellant's failure to testify, "whereby appellant was denied due process of law."

On August 16, 1969, about two o'clock in the morning, Kirk A. Trimble was driving his Mustang car near 46th and Montgall Streets in Kansas City, Missouri. Two friends, Charles Edgar and Terry Wantland, were with him and one of them noticed a following car with five or six persons in it. As Trimble slowed for a stop sign appellant, whom Trimble identified in court, pointed a gun at him and told him to stop, which he did. Trimble was pulled from the car, struck on the head with a pistol several times, and was told to "spread-eagle" on the car. Trimble saw appellant pull Wantland from the car, after which the assailants took about $115.00 from Wantland and $80.00 from Trimble, and drove off in Trimble's Mustang. The time interval of the occurrence was five to seven minutes. Trimble and his companions ran to Prospect Avenue and informed a police officer there as to what had happened. The officer drove the three to Research Hospital for treatment of their injuries and on the way reported the robbery to headquarters by radio, giving a description of the assailants. While the three victims were in the hospital they were informed that a suspect had been arrested, and about 2:30 a. m., a half hour after the robbery, the victims identified appellant in a police lineup as being one of the men who robbed them. There were four persons exhibited along with appellant in the lineup.

Lloyd Harvey was the police officer who arrested appellant in the rear of a pool hall at 4815 Prospect. Two men were then standing at the rear of a white Mustang which had its trunk open. Harvey sent his police dog after the two men as they fled, and appellant jumped on top of the Mustang to escape the dog. Another officer arrived and tried to apprehend the other suspect in the pool hall, but could not find him. This officer recovered four hub caps which came from the Mustang. Appellant was taken to police headquarters and was there identified in a lineup by Trimble and one of the other boys as their assailant.

Appellant did not testify, but presented evidence tending to show an alibi, that he was at the home of Mrs. William Lee Carter, 2308 East 49th Street in Kansas City, sitting on the front porch talking to her daughter from one to two-thirty a. m. on the night in question.

Appellant relies upon United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149; Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178, and Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199, for his contention that the lineup without counsel violated his constitutional rights. Those cases are not controlling under the factual situation here which is that appellant was identified within thirty minutes after the robbery. In Bates v. United States, 132 U.S.App.D.C. 36, 405 F.2d 1104, there was an identification of defendant who was exhibited alone within thirty minutes after an attack. The court said, "There is no prohibition against a viewing of a suspect alone in what is called a 'one-man showup' when this occurs near the time of the alleged criminal act; such a course does not tend to bring about misidentification but rather tends under some circumstances to insure accuracy. * * * there was no 'substantial likelihood of irreparable *misidentification.* * * *." (405 F.2d 1106.) Cases in this state following the reasoning in the Bates case are State v. Hamblin, Mo., 448 S.W.2d 603; State v. Bevineau, Mo., 460 S.W.2d 683, and State v. Smith, Mo., 465 S.W.2d 482. The inquiry then becomes whether there were impermissible suggestive procedures used by the police in the lineup here. The record shows that Trimble and his two companions were seated at different places in the showup room. They were given slips of paper

and pencils and were told by the officer that when they were positive they saw a person who participated in the holdup to write the number down. There is no showing that the police in any way influenced the lineup identification. The record further shows that the robbery occurred very close to a street light. Trimble was positive that appellant was one of the men who robbed him. Wantland had a good look at appellant's face for about two minutes at the scene. There was no doubt in his mind at the trial that appellant was the man who came into the Mustang and pulled him from the back seat. Although appellant at no time at trial questioned the evidence of the lineup, or moved the court to suppress the evidence of identifications (see State v. Tyler, Mo., 454 S.W.2d 564, 567), the evidence shows that the in-court identifications of appellant had an origin independent of the lineup. No violation of appellant's constitutional rights here appears. State v. Franklin, Mo., 448 S.W.2d 583; State v. DeLuca, Mo., 448 S.W.2d 869; State v. Smith, supra.

Instruction No. 6 is:

"The Court instructs the jury that the law presumes the innocence and not the guilt of the defendant, and this presumption of innocence attends the defendant throughout the trial, and at the end entitles the defendant to an acquittal, unless the evidence in the case, when taken as a whole, satisfies you of defendant's guilt beyond a reasonable doubt, as defined in these instructions.

"The Court instructs the jury that if they have a reasonable doubt of defendant's guilt, they should acquit, but a doubt to authorize an acquittal on that ground ought to be a substantial doubt touching defendant's guilt and not a mere possibility of defendant's innocence."

The argument is that Instruction No. 6 did not bind the jury to the evidence in the case and allowed speculation as to innocence; that by the use of the terms "substantial doubt" and "mere possibility" the court invaded the province of the jury and required appellant to assume a quantitative burden of proof of innocence beyond that required by law; and that *any* reasonable doubt is sufficient for acquittal.

Similar attacks on instructions substantially in the form of Instruction No. 6 here were made in State v. Spraggins, Mo., 368 S.W.2d 407; State v. Caffey, Mo., 365 S.W.2d 607, and State v. Rhodes, Mo., 408 S.W.2d 68, and were rejected. The instruction does not constitute an expression of judicial opinion or a comment on the evidence. It tells the jury only to take the evidence as a whole in its consideration of the presumption of innocence and the proposition of a reasonable doubt. No error was made by reason of the giving of Instruction No. 6.

The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM:

The foregoing opinion by PRITCHARD, C., is adopted as the opinion of the Court.

All of the Judges concur.