**STATE of Missouri,
Plaintiff-Respondent,**

v.

**James Samuel CSOLAK,
Defendant-Appellant.**

No. 37826.

Missouri Court of Appeals,
St. Louis District,
Division Four.

Aug. 1, 1978.

**120**

James E. Wynne, Don Anton, Anton, Raleigh, Wynne & Schmidt, St. Louis, for defendant-appellant.

Cortney Goodman, Jr., St. Louis County Pros. Atty. by Gordon L. Ankney, Asst. Pros. Atty., Clayton, John D. Ashcroft, Atty. Gen., J. Michael Davis, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

SNYDER, Judge.

Defendant was convicted by a jury of the crime of rape (§ 559.260, Cum.Supp.1975) and sentenced to twenty years in the Missouri Department of Corrections. He appeals.

As grounds for reversal, appellant contends that the trial court erred: (1) in overruling his motion to suppress evidence; (2) in failing to issue a writ of mandamus to compel the prosecutor to show cause why he did not file a petition to declare appellant a criminal sexual psychopath under § 202.700, RSMo 1969; (3) in overruling appellant's motion to suppress lineup and in-court identification; and (4) in failing to declare a mistrial after a police officer answered a question on direct examination as to whether the victim had identified anyone in the lineup.

No complaint has been made by the appellant as to the sufficiency of the evidence to support the conviction. Therefore, only such facts as are necessary to the discussion of the issues raised will be reviewed.

Appellant first claims error on the part of the trial court in overruling his motion to suppress certain physical evidence seized by the state in the warrantless search of an automobile. The physical evidence in question is a spotlight and a starter pistol.

The victim was driving from a drugstore toward her home at approximately 9:45 p. m. on December 4, 1974 when she noticed a flashing light in the automobile behind her. She drove to the curb and stopped. Appellant walked up to her window, pointed a gun at her head and ordered her to open the door. She resisted appellant's demand to

remove her clothing after which he put the gun to her head and told her if she did not comply he would kill her. She was then forced to have sexual intercourse with appellant against her will.

At 2:00 a. m. on May 31, 1975, Florissant police officers arrested appellant at his home on a tip from another alleged rape victim. After being advised of his *Miranda* rights, appellant stated: "I'm the one you're looking for." Appellant was then taken to the Florissant police station. There, the officers asked him the location of the gun and spotlight used in the alleged rape of the other victim. Appellant said they were in the glove box of his car, a 1964 Mercury two-door convertible. The officers had seen this car outside the residence where appellant was arrested.

Appellant was given a "consent to search" form. The officers explained the form to appellant and after reading it over appellant signed it, thereby consenting to the search of his home and car. At the time appellant signed the consent form, there were two, or at most three, police officers present.

After obtaining the signature, two officers and appellant drove back to the house. Appellant handed his car keys to one of the officers, who unlocked the door and found the items in the glove box. This search took place at 2:30 a. m., approximately one-half hour after appellant's arrest. No search warrant had been issued.

At the hearing on appellant's pretrial motion to suppress these items of evidence, it was proved that title to the 1964 Mercury was in the name of appellant's father. Appellant, however, had his own set of keys to the automobile and did not own a car of his own. Appellant testified at the hearing that he could not recall whether he had signed the consent form. The motion to suppress was denied on the grounds that appellant had no standing to challenge the validity of the search and seizure because he did not own the automobile and could not assert the constitutional rights of another.

The trial court erred in finding appellant had no standing to challenge the validity of this search. The Missouri Supreme Court examined the standing of a child to challenge the search of an automobile owned by the father in *In re J. R. M.,* 487 S.W.2d 502 (Mo.banc 1972). After analyzing a number of United States Supreme Court cases on standing, the court decided to follow what it perceived as the trend in the case law to look beyond title to the property or premises in deciding the standing issue. Instead of a strict reliance on proprietary interest, the court adopted a case by case approach which requires an examination of the facts of each case "to determine the relationship of defendant to the premises and property and to determine whether defendant was entitled to and did have a reasonable expectation that the property would be free from governmental intrusion other than by a proper and lawful search and seizure." (at 508).

On the facts before it in *J. R. M., supra,* the court determined the child had standing to challenge the search. The court noted the child had his own keys to the car and used it regularly as if it were his own. The child was included in the family insurance coverage and lived at home with his parents where the car was kept.

Similarly, appellant here has standing to challenge the search. He had his own keys to the car and used it regularly as if it were his own. Nothing appears on the record about insurance coverage, but the lack of that evidence does not alter the result. When the car was searched it was parked in front of appellant's residence, which was different from his father's. This fact demonstrates the car was in appellant's possession at the time of the search. Appellant was asserting his own constitutional rights, not those of his father. He had a "reasonable expectation that the property would be free from governmental intrusion other than by a proper and lawful search and seizure." *J. R. M., supra,* 508.

The state has cited several cases where the court determined the defendant had no standing to challenge the search because he

did not have a proprietary interest in the car. *State v. Damico,* 513 S.W.2d 351 (Mo. 1974); *State v. Dilworth,* 540 S.W.2d 623 (Mo.App.1976); *State v. Edmonds,* 462 S.W.2d 782 (Mo.1971). All three of these cases involve *stolen* automobiles and are, therefore, distinguishable.

Although appellant had standing to challenge the search, the trial court reached the proper result in overruling his motion to suppress this evidence. "[I]f the trial court reached a correct decision on the issue presented it is immaterial that the court may have assigned an erroneous or insufficient reason for the action taken (cites omitted)." *State v. Garton,* 371 S.W.2d 283, 290 (Mo.1963). Accord: *State v. Haynes,* 482 S.W.2d 444 (Mo.1972); *Umfress v. State,* 512 S.W.2d 178 (Mo.App.1974).

The state seeks to justify this warrantless search on several alternative theories, including appellant's consent to the search. Because valid consent is disclosed by the totality of the circumstances, the other theories will not be discussed.

A warrantless search conducted pursuant to a valid consent is a recognized exception to the Fourth Amendment's ban against unreasonable searches and seizures. *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *State v. Berry,* 526 S.W.2d 92 (Mo.App.1975); *State v. Rush,* 497 S.W.2d 213 (Mo.App.1973). When the state relies upon the defendant's consent to justify a warrantless search, it has the burden of proving that the consent was freely and voluntarily given. *Schneckloth, supra; Berry, supra.*

In determining whether a defendant has voluntarily consented to a search, a court looks to the "totality of the circumstances" surrounding the consent. *Schneckloth, supra; State v. Pinkus,* 550 S.W.2d 829 (Mo.App.1977). "Factors to be considered are the number of officers present, the degree to which they emphasized their authority, whether weapons were displayed, whether there was any fraud on the part of the officers, the acts and statements of the person giving consent, and other matters comprising the so-called 'totality of the circumstances.' *State v. Berry,* 526 S.W.2d 92, 98 (Mo.App.1975); *State v. Rush, supra,* 497 S.W.2d at 215." *Pinkus, supra,* 835.

There were only two, or possibly three, officers present when the consent form was discussed and signed; there is no evidence that appellant was overwhelmed by the superior numbers of the police. No weapons were displayed and appellant was not handcuffed or in any way physically intimidated or abused. Appellant was under arrest, but there is no indication that the police officers exploited their authority to secure his consent. There is also no evidence of any fraud, misleading statements or promises on the officers' part. Appellant signed the consent form after it was explained and read to him and after he, himself, had read it. Throughout the arrest and interrogation procedures appellant was cooperative and friendly.

Other facts also support the finding of valid consent. Interrogation of appellant could only have lasted a short time if the officers were able to return to appellant's residence within one-half hour of his arrest. In addition, appellant made several incriminating statements prior to his consent. When arrested, and after being given the *Miranda* warning, appellant said, "I'm the one you're looking for." At the police station he admitted possession of the pistol and spotlight and told where they could be found. "It is generally accepted that consent to a search is valid when preceded by incriminatory statements, there being no reason to assume that the defendant would not voluntarily consent to a search for evidence if he volunteered damaging admissions." Annotation, 9 A.L.R.3d 858, 883 (1966). Further, appellant freely cooperated in the search. He directed the officers to the evidence and handed them the keys to his car so that they could examine the glove box.

The fact that appellant was in custody at the time of his consent casts some doubt on the voluntariness of that consent. However, in Missouri, the fact

that an individual is under arrest is not, of itself, enough to establish that such consent was involuntary. *State v. Virdure,* 371 S.W.2d 196 (Mo.1963); *State v. Foster,* 349 S.W.2d 922 (Mo.1961). There is no specific requirement that the person consenting be advised of his right to refuse consent to the search or that it be shown he was already aware of that right. *Schneckloth, supra; Rush, supra; Berry, supra.* Given the totality of the circumstances, the state has sustained its burden of showing the consent was freely and voluntarily given. More than mere "acquiescence to a claim of lawful authority" was shown. *Rush, supra,* 215. The motion to suppress the evidence was properly overruled.

█ Appellant next claims that the trial court erred in failing to issue a writ of mandamus to compel the prosecuting attorney to show cause why he did not file a petition to declare appellant a criminal sexual psychopath under § 202.700, RSMo 1969. No alternative writ of mandamus was issued by the trial court; therefore, appellant's remedy at the time was an application for the same writ of mandamus to the next higher court having original jurisdiction. That is, appellant should have come to the Missouri Court of Appeals with his application. *State ex rel. Brandon v. Hickey,* 462 S.W.2d 159 (Mo.App.1970). If the alternative writ had been issued by the trial court and a return made, then an appeal would lie from either the granting of or refusal to grant a peremptory writ. *Penner v. Whitesell,* 538 S.W.2d 772 (Mo.App. 1976). Since appellant did not seek the proper remedy at the proper time, the criminal sexual psychopath issue is not properly before this court.

█ Even if this issue were before the court, it would be ruled against appellant. Assuming that the prosecuting attorney has reason to believe that the defendant is a criminal sexual psychopath, as that term is defined in § 202.700, RSMo 1969, it is nonetheless discretionary with him to file the petition and initiate this proceeding. *State v. Tartenaar,* 371 S.W.2d 192 (Mo.1963); *Davis v. State,* 482 S.W.2d 468 (Mo.1972).

Even if a petition has been filed, the prosecuting attorney may withdraw or abandon it. *Tartenaar, supra.* The prosecutor's action will not be disturbed unless appellant shows that the discretion was exercised contrary to law or in a capricious or arbitrary manner. *State v. Allen,* 255 S.W.2d 144 (Mo.App.1953).

Appellant contends that the trial court erred in overruling his motion to suppress lineup and in-court identification of the appellant by the victim and in allowing her to identify appellant in court on direct examination. He asserts that the lineup did not contain a sufficient number of individuals who resembled him and that he was identified by reason of his individuality rather than the victim's recollection of his appearance. He further argues that the victim based her in-court identification upon her memory of the lineup rather than her memory of his appearance at the time of the offense.

█ Even if lineup procedures are suggestive, and the evidence here does not support a finding of undue suggestiveness, identification testimony by a witness is admissible if there exists an independent source for the identification. "The presence of an independent source will serve to remove any taint that might result from a suggestive confrontation, (cites omitted)." *State v. Davis,* 529 S.W.2d 10, 14 (Mo.App. 1975). "[I]t is no longer open to argument in Missouri that, even though the photographic or line-up identifications are tainted or in some way suggestive, where there is an untainted, positive in-court identification made upon a factual basis independent from such photographic or line-up procedures, such in-court identification is proper. (cites omitted)." *State v. Ealey,* 515 S.W.2d 778, 780 (Mo.App.1974). This principle applies to testimony about both a pretrial identification [*Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972)] and an in-court identification [*State v. Davis, supra; State v. Ealey, supra; State v. Bivens,* 558 S.W.2d 296 (Mo.App.1977)]. If there is proof of an independent source of observation on which a witness has based his identi-

fication testimony, the court need not examine the details of the questioned lineup procedures for impermissible suggestiveness. *State v. Ross,* 502 S.W.2d 241 (Mo. 1973); *State v. Mitchell,* 558 S.W.2d 383 (Mo.App.1977).

The factors the court must examine to isolate an independent basis for identification are set out in *Neil v. Biggers, supra,* 199:

> [T]he opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

See also, *State v. Davis, supra; State v. Barnes,* 535 S.W.2d 602 (Mo.App.1976).

The victim had her best view of the appellant when he was standing beside her automobile next to the rolled-down window. She could see him clearly inside the car although she was not certain her car's dome light was working. Appellant forced the victim to straddle him during intercourse and they set face to face for a period of five to seven minutes. Their faces were "right next to each other." The victim had ample opportunity to view appellant. Of more weight is the victim's own statement at trial that her identification of appellant was based on, in her words, "the night it happened. I can't forget his face."

Shorter periods of observation have been found sufficient opportunity to view the assailant: *U. S. v. Mooney,* 417 F.2d 936 (8th Cir. 1969), cert. den. 397 U.S. 1029, 90 S.Ct. 1280, 25 L.Ed.2d 541 (1970) [15 seconds]; *State v. Bivens, supra* [15 seconds–60 seconds]; *State v. Young,* 534 S.W.2d 585 (Mo.App.1976) [3 seconds]; *State v. Patterson,* 465 S.W.2d 599 (Mo. 1971) [2 minutes]. Although there is some evidence that the lighting in the area was dim, the area was lit by residential gas lights. In *Mooring v. State,* 501 S.W.2d 7 (Mo.1973), the court indicated the victim had an independent source for her identification testimony based upon her observation of the defendant in an area lighted by house lights. Given the close proximity of the victim and appellant and her ability to get a close range view of him, the lighting takes on less importance. Further, common sense confirms that "[n]o other crime offers the opportunity for observation of the perpetrator as the crime of rape." *State v. Green,* 515 S.W.2d 197, 199 (Mo.App.1974); *Grant v. State,* 446 S.W.2d 620, 622 (Mo. 1969).

The victim here paid close attention to her assailant and was able to provide the police with a reasonably detailed description of her attacker, including his approximate age, height and build, hair color and length, the clothes worn by him and the facts that he had a young or "smooth" face and a mustache.

At both the lineup and the trial, the victim was unhesitating and unequivocal in her identification of the appellant. She recognized appellant immediately at the lineup before he even stepped forward. She noticed that his hair and mustache were somewhat longer at that time than on the night of her rape. She had no doubt that she was identifying her attacker. At trial, her identification was equally positive.

Although five months had elapsed between the crime and the lineup, the time lag is not fatal. Similar or longer periods have been approved: *Neil v. Biggers, supra* [seven months]; *Davis, supra* [two years]; *Ealey, supra* [four and one-half months]; *State v. Rutledge,* 524 S.W.2d 449 (Mo.App. 1975) [nearly four months].

Having established a positive in-court identification and that a substantial independent basis for the victim's identification testimony exists, it follows that the trial court did not err in overruling appellant's motions to suppress that testimony, despite appellant's claims of unnecessary suggestiveness in the pretrial confrontation. *Davis, supra; State v. Holland,* 534 S.W.2d 590 (Mo.App.1976); *Ealey, supra.*

Appellant's final claim is that the trial court erred in not declaring a mistrial because of certain testimony of a police officer concerning the lineup identification.

The officer was asked, "Did she [the victim] identify any of the individuals to you?" The officer answered in the affirmative. Appellant's objection was sustained. Appellant then moved for a mistrial. The motion was denied and the court sua sponte instructed the jury, "to completely disregard the last question and the last answer, the objection to which was sustained."

The appellant cites *State v. Degraffenreid,* 477 S.W.2d 57 (Mo.banc 1972) and *State v. Fleming,* 354 Mo. 31, 188 S.W.2d 12 (1945) in support of his claim of error. The officer's statement as to the victim's out-of-court identification here and in *Degraffenreid* was hearsay. However, *Degraffenreid* is not otherwise in point. In *Degraffenreid,* the officer testified that he had seen the witness identify a photograph of the defendant and later identify the defendant in a lineup. The objection there was overruled and no corrective action was taken. Here, there was no testimony as to who was identified by the victim; the objection was sustained and the court instructed the jury to completely disregard the offending testimony. *Fleming,* too, is distinguishable. There was lengthy objectionable testimony in that case from four witnesses: the prosecutrix, her father and two police officers. Defendant's objection to all of the testimony was overruled by the trial court, a far more prejudicial situation than exists here.

The declaration of a mistrial is a drastic remedy and "rests largely in the discretion of the trial court who has observed the incident giving rise to the request for a mistrial, and who is in a better position than an appellate court to evaluate the prejudicial effect and possibility of its removal by action short of a mistrial." *State v. Camper,* 391 S.W.2d 926, 928 (Mo. 1965). *State v. Rollins,* 449 S.W.2d 585 (Mo.1970), cert. den., 399 U.S. 915, 90 S.Ct. 2220, 26 L.Ed.2d 573 (1970); *State v. Mullen,* 528 S.W.2d 517 (Mo.App.1975); *State v. Berry, supra.* The trial court did not abuse its discretion in refusing to declare a mistrial.

The judgment is affirmed.

DOWD, P. J., and ALDEN A. STOCKARD, Special Judge, concur.