**STATE of Missouri, Respondent,**

**v.**

**Willie Mae JOHNSON, Appellant.**

**No. 61694.**

Supreme Court of Missouri,
En Banc.

April 8, 1980.

Rehearing Denied May 13, 1980.

Christelle Adelman-Adler, Asst. Public Defender, St. Louis, for appellant.

John Ashcroft, Atty. Gen., Weldon W. Perry, Jr., Asst. Atty. Gen., Jefferson City, for respondent.

PER CURIAM.

This case involves double jeopardy.

Appellant was tried in January 1977 of murder in the first degree of Gladys Gregg and robbery of Gladys Gregg. Appellant was acquitted of the charge of murder. The jury could not reach a verdict on the robbery charge and a mistrial was declared. In March 1977 appellant was tried again for the robbery of Gladys Gregg. She was convicted of robbery by the jury and was sentenced to ten years' imprisonment. Appellant appealed to the Eastern District of the Missouri Court of Appeals where the judgment of conviction was reversed and appellant was ordered discharged. The cause was then transferred to this Court. We decide it "the same as on original appeal." Mo. Const. art. V, § 10.

The "substitute information in lieu of indictment" upon which appellant was tried the first time charged that she, acting with another, "feloniously, willfully, premeditatedly, deliberately, on purpose and of her malice aforethought did make an assault upon one Gladys Gregg, with a plastic bag, and then and there feloniously, willfully, premeditatedly, deliberately, on purpose and of her malice aforethought did strangle and suffocate the body of the said Gladys Gregg * * *" thus causing her death. However, at the conclusion of the trial and over defense counsel's objection, the trial court refused to give a "conventional murder first degree" instruction. Rather, the murder charge was submitted to the jury under the felony-murder doctrine, thus directing the jury to find appellant guilty of the murder of Gladys Gregg if it found that she caused the death of the victim "and, Second, that she did so in robbing Gladys Gregg, * * *." As pointed out above, appellant was acquitted of the murder charge.

After a mistrial was declared as to the charge of robbery of Gladys Gregg, appellant filed a motion to dismiss the charge, alleging that retrial on such charge would violate her right against double jeopardy. The motion was denied by the trial court. After the second trial, the point was properly preserved in the motion for new trial.

■ It is clear that appellant cannot again be tried for the offense of murder, of which she was acquitted. The question is whether appellant may be retried for robbery, the underlying felony, on which the jury became deadlocked and a mistrial was declared.

In the context of this case, there are three aspects of double jeopardy which must be considered: 1) multiple punishment; 2) multiple prosecution; and 3) collateral estoppel of issues previously determined.

First, there is no danger of multiple punishment here, where no conviction as to either offense was returned.

■ Second, although the multiple prosecution problem is applicable here to the robbery offense, case law consistently holds that a defendant is entitled to immunity from reprosecution only if he can show that the mistrial was intentionally triggered by the state for the tactical purpose of strengthening the prosecutions's case. *United States v. Dinitz*, 424 U.S. 600, 611, 96 S.Ct. 1075, 1081, 47 L.Ed.2d 267 (1976). Since a hung jury cannot be attributed to bad faith on the part of the prosecution, a retrial is permissible. *United States v. Sanford et al.*, 429 U.S. 14, 97 S.Ct. 20, 50 L.Ed.2d 17 (1976); *State v. Berry*, 298 S.W.2d 429 (Mo.1957); *State v. Sales*, 558 S.W.2d 302 (Mo.App.1977).

■ The crucial question on the collateral estoppel issue is: What issues does a general verdict of acquittal of felony-murder resolve? *See Turner v. Arkansas*, 407 U.S. 366, 369, 92 S.Ct. 2096, 2098, 32 L.Ed.2d 798 (1972). It cannot be convincingly argued that the jury's acquittal of the murder charge impliedly acquitted appellant of the

robbery, as in *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1969). Distinguishing this case from *Ashe* is the fact that here it cannot be said that there was only a "single rationally conceivable issue in dispute before the jury." *Id.* at 445, 90 S.Ct. at 1195. In light of the inability of the jury in the January 1977 trial to return a verdict on the robbery charge, we conclude that its acquittal of murder under the felony-murder doctrine was for a reason, or on an issue, not related to robbery.

Appellant next contends that there was error in the trial court's overruling her motion for judgment of acquittal at the close of the case, i. e., that a submissible case of robbery first degree had not been made against appellant.

Briefly, the evidence adduced consisted of 1) several fingerprints identified as appellant's lifted from various objects at the decedent's premises; 2) testimony of a neighbor of the victim that one Sandra Ross, admittedly appellant's lover, had been seen entering and leaving the decedent's premises on the night in question, and that concurrently a dark colored car containing two other unidentified occupants had been observed beside her apartment building; 3) the subsequent arrest of Sandra Ross and appellant's brother in a maroon and black car, which contained two pillowcases full of silverware, all identified as belonging to the decedent; and 4) the flight of appellant when she was much later approached by police officers.

■ It is obvious that the state's case consisted of, and the jury's conviction was based on, circumstantial evidence. Appellant made a statement to police after her arrest that she was unfamiliar with decedent's residence and did not recognize a photo of it. At trial, however, appellant attempted to lessen the impact of the damning fingerprint evidence by suggesting that since she was Sandra Ross's lover and frequent companion, it would not be unlikely that she might have accompanied Ross to decedent's premises in the past, since Ross was acquainted with her. Although no evidence to this effect was put

on, appellant argues that the state has not met the test of sufficiency required when circumstantial evidence is relied on: that the facts and circumstances relied upon by the state to establish guilt must be inconsistent and irreconcilable with a hypothesis of defendant's innocence. *See State v. Thomas*, 452 S.W.2d 160 (Mo.1970). We note, however, that this test must be realistically tempered in its application; the circumstances need not demonstrate the impossibility of innocence; the mere existence of other possible hypotheses is not enough to remove the case from the jury. *See State v. Franco*, 544 S.W.2d 533 (Mo. banc 1976), *cert. denied*, 431 U.S. 957, 97 S.Ct. 2682, 53 L.Ed.2d 275 (1977).

■ *State v. Gales*, 507 S.W.2d 35 (Mo. App.1974) is a case involving facts very similar to those presented here. The victim lived alone and was found dead. She was bound, her apartment was in disarray, and defendant's fingerprints were found on her jewelry box. Articles of personal property which had been in defendant's possession were identified as belonging to the victim. Similarly, in this case no eyewitnesses to the crime were present, the victim was found dead, bound and gagged, the premises were in disarray, and appellant's fingerprints were found on objects therein. Objects stolen from decedent were found in the possession of appellant's lover and appellant's brother, and a neighbor had seen *three* people near the house on the night that the victim was last seen alive.

"Much of the evidence in the instant case is circumstantial. But, the rule in Missouri is, that in order to convict upon circumstantial evidence, the circumstances must be consistent with each other and with the theory of the defendant's guilt and inconsistent with innocence, and must exclude every other reasonable hypothesis except for guilt. * * *.

" * * * Proof that fingerprints found in the place where a crime is committed under such circumstances that they could only have been impressed at the time the crime was committed—corresponding to those of the accused—may

be sufficient proof of identity to sustain a conviction."

*Id.* at 37. We conclude that appellant's claim that the evidence was insufficient for submission to the jury is without merit.

Finally, appellant contends that the court erred in overruling appellant's motion to suppress numerous pieces of silverware and two pillow slips obtained by search and seizure without a warrant and allegedly without other lawful authority. The state submits that appellant has no standing to raise such a claim, and that in any event, the arresting officer had probable cause to stop the vehicle in question. The underlying facts giving rise to appellant's constitutional claims are that a neighbor of the decedent testified that she saw a dark colored automobile occupied by two persons parked near the decedent's house on the night of the murder. On the day after the decedent was found dead, detectives of the St. Louis Police Department were maintaining surveillance of appellant Willie Mae Johnson's residence. As they watched, a man and a woman—appellant's brother, Ronnie Johnson, and Sandra Ross—walked out of the house suspiciously carrying pillowcases filled with items and entered an automobile. Since neither of the persons was the object of the surveillance, the detectives did not confront them but placed a radio call to Sergeant Charles McCrary who was parked several blocks away as a backup to the detectives. At their request, McCrary stopped the vehicle, a black over maroon 1968 Pontiac, driven by Ronnie Johnson. On the floorboard in front of Sandra Ross were two pillowcases containing numerous articles of silverware in plain view. McCrary seized the silverware and took Ronnie Johnson and Sandra Ross to police headquarters for questioning. The pillowcases were identified by Mrs. Gregg's maid as belonging to the victim. The silverware in the pillowcases was identified by both the maid and Mrs. Gregg's stepson as belonging to Mrs. Gregg.

"[T]here is no standing to contest a search and seizure [unless appellant (a) was] on the premises at the time of the contested search and seizure; (b) alleged [a] *proprietary or possessory interest* in the premises; [or] (c) [was] charged with an offense that includes, as an essential element of the offense charged, possession of the seized evidence at the time of the contested search and seizure." (Emphasis added.) *Brown v. United States,* 411 U.S. 223, 229, 93 S.Ct. 1565, 1569, 36 L.Ed.2d 208 (1973). The second situation is the only one relevant here. Since title is no longer the ratio decidendi for standing, *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), more subtle proprietary and possessory interests must be examined to determine this status.

Appellant's father testified at the suppression hearing that he *owned* the Pontiac and that it was purchased for the use of his five children, including appellant. However, appellant did not live with her parents.

Both parties cite *In re J. R. M.,* 487 S.W.2d 502 (Mo. banc 1972) on the issue of proprietary or possessory interest. The defendant there was a juvenile; his father owned a Corvair which the defendant had the right to use at any time. He had his own keys to the car; he regularly drove it to school, and he was included in the insurance coverage on the car. Furthermore, he lived with his parents where the car was kept. The court concluded that the defendant "used the car much as he would have done if title had been in him," *id.* at 509, and found the above factors sufficient to confer standing.

In *State v. Csolak,* 571 S.W.2d 118 (Mo. App.1978), the court applied the "case by case approach" of *In re J. R. M.* "which requires an examination of the facts of each case 'to determine the relationship of defendant to the premises and property and to determine whether defendant was entitled to and did have a reasonable expectation that the property would be free from governmental intrusion other than by a proper and lawful search and seizure.'" *Id.* at 121. *See Mancusi v. DeForte,* 392 U.S. 364, 368, 88 S.Ct. 2120, 2123, 20 L.Ed.2d 1154 (1968), where this language originated. The appel-

lant in *Csolak* likewise had his own keys to the car, which was owned by his father, and "used it regularly as if it were his own." 571 S.W.2d at 121. The opinion also stressed the fact that at the time of the search, the car was parked in front of appellant's residence, which was different from his father's. The court indicated that this demonstrated that the car was in appellant's *possession* at the time of the search.

None of the elements stressed by these cases were present in this case. Only appellant's father had a key to the Pontiac. Appellant's right to use the car was vested equally with her four other brothers and sisters, in addition to her parents, and the latter made the decision, if there was a conflict, as to who would have use of the vehicle. There was no showing that appellant was listed as an insured on the Pontiac's insurance policy. Importantly, appellant was not in possession of the car at the time of the questioned seizure. Further, there was testimony that appellant rarely used the car. It was kept at her father's home, while she lived elsewhere at another residence also owned by her father.

 It is clear that suppression of evidence can only be sought by a person who has sufficient connection with the searched vehicle or premises that his rights were violated; it is not enough that a person was injured because of the damaging evidence obtained as a result of a search. *See Alderman v. United States*, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969); *State v. Drake*, 512 S.W.2d 166, 170 (Mo.App.1974). This issue is ruled against appellant. Therefore, we find it unnecessary to determine whether the arresting officers had probable cause to stop the vehicle in question.

The judgment is affirmed.

RENDLEN, WELLIVER, MORGAN and HIGGINS, JJ., concur.

BARDGETT, C. J., concurs in separate concurring opinion filed.

DONNELLY, J., dissents in separate dissenting opinion filed.

SEILER, J., dissents and concurs in separate dissenting opinion of DONNELLY, J.

BARDGETT, Chief Justice, concurring.

I concur in the per curiam opinion in this case but do so on rather narrow grounds. This case involves an original prosecution where the defendant was charged with murder in the first degree of James Bell, murder in the first degree of Gladys Gregg, robbery of James Bell, and robbery of Gladys Gregg. These charges were brought under § 559.010, RSMo 1969, which is our old murder-in-the-first-degree statute and permits murder in the first degree to be submitted to the jury upon evidence that the homicide was committed in the perpetration or attempt to perpetrate certain felonies, among which is robbery. The murder submission in this case was made under the so-called felony-murder rule, which, in order to convict of murder in the first degree, required a finding by the jury that the defendant was engaged in the felony of robbery *and* in the course of the robbery killed the deceased. A failure to find the defendant killed the deceased in the course of the robbery would require a jury verdict of not guilty on the charge of murder in the first degree. However, in my opinion it would not preclude the jury from finding that the defendant was guilty of the robbery.

In this case the jury found defendant not guilty of both counts of murder. The state dismissed the charge of robbery of James Bell during the course of the trial, after jeopardy attached, which would preclude a reprosecution for that offense. However, the charge of robbery of Gladys Gregg was submitted to the jury and the jury returned no verdict (hung jury). Of necessity, the court then declared a mistrial and discharged the jury.

In this case we see an instance where the prosecutor has charged and tried the defendant for all of the crimes (robbery and murder) arising out of that particular event which were available for prosecution under the law *and* rules of this Court. What we do *not* have is an instance where the prosecution withheld part of the matter, i. e., the

robbery, so as to prosecute for the robbery in the event that the jury acquitted of the felony murder based upon the robbery. Nor do we have an instance where the prosecutor undertook to split up the original crime (murder in the first degree based on the robbery) and later prosecute it piecemeal. Therefore I believe that the original submission for felony murder was properly submitted as a homicide committed in the course of the felony of robbery and that the jury would have been permitted to find defendant not guilty of the first-degree murder and guilty of the robbery. At the time this case was tried the instructions were submitted for murder in the first degree as a homicide committed while in the course of the robbery, and independently and conjunctively for the underlying robbery. In my opinion the proscription against double punishment would have precluded the jury and does preclude the jury from finding the defendant guilty of both robbery and murder in the first degree premised on the underlying felony of robbery, and then assessing a punishment for each of those crimes.

It is my opinion that *State v. Morgan*, 592 S.W.2d 796 (Mo. banc 1980), held in essence that if the felony relied upon to obtain a conviction of first-degree murder, where it is alleged that the homicide occurred during the course of the felony, results in a conviction of first-degree murder, the underlying felony has been "used up" and cannot become the basis of another conviction or another punishment. This is not, in the ordinary sense, a lesser-included-offense situation. It is simply a situation created by the legislature in enacting a statute, which in effect declares that if a person in committing a particular type of felony kills someone in the course of the felony the killing is murder in the first degree. It is therefore my opinion that the felony of robbery should have been submitted as an alternative to felony murder in the first degree to be considered by the jury only in the event that they found defendant not guilty of first-degree murder premised on that robbery.

Had the state not proceeded on the underlying felony in this original prosecution but only on the charge of first-degree murder premised on the commission of the underlying felony, then, in my opinion, the state would have tried to prosecute the defendant piecemeal. See *State v. Richardson*, 460 S.W.2d 537, 539 (Mo. banc 1970).

Of course there will be instances where, under the facts of a given case, the state will not be able to proceed with the prosecution of the robbery because of collateral estoppel under *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1969), as well as instances where, under Rule 24.-04(a), the underlying felony cannot be charged. However; in the instant case the evidence of the offenses was circumstantial and it cannot be said that the "real" issue was whether or not the defendant was present at the scene, as was the case in *Ashe v. Swenson, supra*.

I therefore concur in the affirmance of the conviction.

DONNELLY, Judge, dissenting.

In *State v. Morgan*, 592 S.W.2d 796, 803 (Mo. banc 1980), this Court held that "the felony relied on to prove intent in a felony-murder case is a lesser-included offense of the murder"—that the *felony* relied on to prove intent in a felony-murder case and the *murder* are, for constitutional purposes, the *same offense*.

Article I, § 19 of the Missouri Constitution provides that no person shall "be put again in jeopardy of life or liberty for the *same offense*, after being once acquitted by a jury; * * *." (Emphasis supplied).

Appellant was tried in January 1977 for the murder of Gladys Gregg. The felony relied on to prove intent in the murder case was robbery. Appellant was acquitted on the murder charge. She could not thereafter be convicted of robbery because, under *Morgan, supra*, the murder (submitted under the felony-murder doctrine) and the robbery were the *same offense* and she had been acquitted by a jury of the murder. Under the Missouri Double Jeopardy Clause, the conviction of robbery cannot be permitted to stand.

I would order the judgment of conviction reversed and the appellant discharged.

I respectfully dissent.