**STATE of Missouri, Respondent,**

v.

**Jerry William ARMBRUSTER, Appellant.**

**No. 10080.**

Missouri Court of Appeals, Springfield District.

Sept. 10, 1976.

Paul Crider, Jr., Public Defender, Rolla, for appellant.

John C. Danforth, Atty. Gen., Douglas G. Mooney, Asst. Atty. Gen., Jefferson City, for respondent.

FLANIGAN, Judge.

Defendant Jerry William Armbruster, tried as a second offender, was convicted by a jury of robbery in the first degree and was sentenced to 30 years in prison. Defendant does not question the sufficiency of the evidence to support the conviction.

The first of defendant's four appellate contentions, each unavailing, is that the trial court erred in admitting into evidence the "pre-trial identification" of defendant by Janet Congiardo, the victim. The trial court had denied defendant's pre-trial motion to suppress this evidence and had overruled defendant's objection to its introduction at the trial. Defendant claims that the attacked evidence was inadmissible because "the totality of the circumstances surrounding the identification of defendant at the scene was so suggestive and conducive to irreparable mistaken identification as to violate" his constitutional rights. Defendant also says that the attacked evidence rendered inadmissible Janet's in-court identification of defendant.

On the morning of October 28, 1974, Janet Congiardo, employed as a cashier by Western and Southern Insurance Company, was working alone in the company's office in Rolla, Missouri. The office was well illuminated and Janet's eyesight was good. The robbery was perpetrated by a man who was in the office with Janet for 10 to 12 minutes prior to its commission. Only the man and Janet were there during that period. Janet had seen the man at the office on two occasions during the previous two weeks. During the time the man was in the office prior to the robbery he and Janet engaged in about 10 minutes of "small talk." The man then left the office and, according to Janet's testimony, "in no more than two minutes he came running in the door and around my desk with a knife in his

hand and he robbed me." The robbery took place about 9:30 a. m.

Janet said that "it seemed like quite a while" that the robber was in the office while the offense was being committed. During that time she had an additional opportunity to observe him. She testified that the man took $48.25 from the cash drawer and $4.00 or $5.00 out of t' safe and put it in his pocket before he fled the scene. "Just minutes" after he left Janet went next door to a beauty shop and told the girl there that she had been robbed and asked her to call the police.

About 10 a. m. Officer Kelley arrived and Janet gave him a description of the robber. Kelley "immediately started back to my patrol car to put the description on the radio." As Kelley did so, another police car arrived at the scene. This took place about 10:10 a. m. This car contained three men: the defendant and police officers Sandifer and Waterman.

These two officers had started toward the insurance office "to back up" Kelley. While en route they saw the defendant "and another gentleman having an altercation—looked like there possibly might be a fight." Sandifer arrested the defendant. Sandifer added: "We still did not know what we had at the insurance company. We put the defendant in the police car and proceeded on." The defendant had a butcher knife, State's Exhibit 8, in his possession at the time of the arrest. Later at the police station, when the defendant was searched, "we found $51 or $52 just stuffed in his pocket."

Kelley testified that as he was giving the description of the robber to the other two officers "I realized I was describing the suspect they had in the car with them." Kelley immediately went back into the insurance office. According to Janet, he told her "that from the description I gave him of the robber Kelley thought that he might be the one they had in custody and Kelley asked me if I would identify him."

As she stepped out the door, the defendant was coming toward the insurance office

with officers Sandifer and Waterman. When Janet saw the defendant she said "Oh, my God, it's him" and covered her face and went back inside.[1] Janet testified that when she did so she was very upset. This testimony was then elicited from Janet on cross-examination by defendant's counsel:

"Q. Now, are you sure in your own mind that this suggestion of Officer Kelley, coupled with your state of mind at the time, didn't taint your identification, ma'am?

A. No, I spent several minutes with him, even before he actually pulled the knife on me, and I—no way I could be mistaken."

When shown State's Exhibit 8, the butcher knife, Janet said "It looks like the knife the robber had."

Defendant particularizes his attack upon the admissibility of Janet's testimony concerning her pre-trial identification of defendant by asserting that the confrontation took place at a time when Janet was "hysterical" and that it "occurred following suggestive remarks made by Officer Kelley." Defendant relies primarily upon *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

In *Neil v. Biggers,* 409 U.S. 188, 196, 93 S.Ct. 375, 380, 34 L.Ed.2d 401, 409, the United States Supreme Court summarized the holding in *Stovall* to be that a defendant could claim that the confrontation conducted was so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law. "This we held, must be determined 'on the totality of the circumstances.'"

In *Neil,* 409 U.S. at p. 198, 93 S.Ct. at p. 381, 34 L.Ed.2d at p. 410, the court said:

"It is, first of all, apparent that the primary evil to be avoided is 'a very substantial likelihood of irreparable misidentification.' *Simmons v. United States,* 390 U.S. [377], at 384, 88 S.Ct. [967], at 971, 19 L.Ed.2d 1247. While the phrase was coined as a standard for determining whether an in-court identification would be admissible

in the wake of a suggestive out-of-court identification, with the deletion of 'irreparable' it serves equally well as a standard for the admissibility of testimony concerning the out-of-court identification itself."

On the following page it said:

"As indicated by our cases, the factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation."

■ In the case at bar Janet had a good opportunity to view the criminal at the time of the robbery. She also viewed him for 10 or 12 minutes prior to its commission and while they were engaged in small talk. She had seen him on two recent prior occasions. Her "degree of attention" was high. Her description of the robber, given to Officer Kelley, was accurate enough to cause Kelley to recognize the defendant as fitting her description. At the confrontation Janet demonstrated a high level of certainty in the identification. The length of time between the crime and the confrontation was less than 40 minutes. The totality of the circumstances, gauged by the foregoing factors, supports the admissibility of the pre-trial identification. *State v. Dodson,* 491 S.W.2d 334, 336[3–5] (Mo. banc 1973); *State v. Smith,* 465 S.W.2d 482, 484[1] (Mo.1971); *State v. French,* 528 S.W.2d 170, 173[7] (Mo. App.1975).

Missouri cases have approved the practice of law officers taking a criminal to the scene for immediate identification by the victim. See for example, *State v. Jackson,* 477 S.W.2d 47, 51 (Mo.1972) ("a proper procedure, justified by the exigencies of the situation."); *State v. Dodson,* 491 S.W.2d, supra, at 337[4] ("proper and desirable for the police to ascertain at the earliest possible moment whether the person arrested

1. Later in the day Janet again identified him in a lineup held in the city hall. Defendant, who was represented by counsel at that lineup, makes no complaint with regard to it.

was or was not the person sought"); *State v. McDonald*, 527 S.W.2d 46, 48 (Mo.App. 1975).

"In Missouri, a judicial or extra-judicial identification by a person testifying at trial is admissible." *State v. Sigh*, 470 S.W.2d 503, 505[2] (Mo. banc 1971); *State v. Maxwell*, 502 S.W.2d 382, 391[10] (Mo.App.1973); Anno. 71 A.L.R.2d 449, 460.

Defendant's claim that Janet was "hysterical" at the time of the confrontation lacks support from the record. Although Officer Kelley said that she was "in hysterics" when he first asked her to look at the defendant, Kelley also stated that he talked with her and that she "calmed down" before the confrontation took place. Janet said that she was "very upset" at the time she identified the defendant. However, her identification was positive.

■ The law does not require, as a condition to the admissibility of the testimony of the victim of a crime, that he remain unruffled during its commission and aftermath. Janet's emotional reaction was one to be expected under the circumstances. The record does not show that it reached such a degree as to impair her testimonial competency as a matter of law. Her emotional condition at the time of the confrontation was a proper subject of inquiry because it bore upon her credibility but there is no showing that her mental state was such that she lacked "sufficient understanding to receive, remember and narrate impressions." [2]

Defendant brands as "suggestive" the statements made by Officer Kelley to Janet prior to the confrontation. Kelley told Janet that from the description she gave him of the robber, Kelley thought the defendant might be the man they had in custody and he asked her if she would identify him. Defendant does not question the fact that the defendant did fit the description which

Janet had given Kelley only a few minutes before the confrontation. Kelley did not tell Janet that the man in custody was the robber. He stated that, from the description, the man might be the robber.

■ The statements attributed to Kelley contained no element of inaccuracy or undue suggestiveness. Similar statements made by a police officer to a witness have been held not to render an ensuing show-up unnecessarily suggestive and improper. *State v. French*, 528 S.W.2d 170, 173[7] (Mo. App.1975); *People v. Smith*, 40 A.D.2d 1068, 339 N.Y.S.2d 249 (1972); *People v. Lynch*, 111 Ill.App.2d 52, 249 N.E.2d 649 (1969); *People v. Logan*, 25 N.Y.2d 184, 303 N.Y. S.2d 353, 250 N.E.2d 454 (1969); Anno. 39 A.L.R.3d 791, 801.

This court concludes that there was no error in admitting the testimony of the pre-trial identification of defendant. It follows that the trial court did not err in permitting the introduction of the evidence concerning the in-court identification of defendant because the only attack upon the latter testimony was on the ground, now ruled invalid, that evidence of the pre-trial identification was inadmissible. Defendant's first contention has no merit.

Defendant's second contention is that the trial court erred in admitting into evidence, over defendant's objection, testimony "concerning the arrest of defendant for a separate and independent crime." This contention refers to testimony of Officer Sandifer with regard to the circumstances prompting the arrest of the defendant.

Sandifer testified that defendant "was in front of the Edwin Long Hotel, him and another gentleman, having an altercation—looked like there possibly might be a fight." This incident took place three to five blocks from the scene of the crime and within 30 minutes after its commission. At the time of the arrest defendant had in his posses-

---

**2.** "[I]t may be laid down here as a general principle that a person is competent to testify as a witness if he has sufficient understanding to receive, remember, and narrate impressions, and is sensible to the obligation of an oath. Testimonial competency, therefore, is to be dis-

tinguished from credibility of a witness and from a witness' possession of knowledge sufficient to enable him to testify concerning a specified matter." 81 Am.Jur.2d Witnesses § 69, p. 109. See also *McCrary v. Ogden*, 267 S.W.2d 670, 673[7] (Mo.1954).

sion State's Exhibit 8, the butcher knife, and $51 or $52 was found "just stuffed in his pocket."

■ Sandifer's laconic description of the circumstances prompting the arrest may fall short of constituting proof of the commission of a separate offense.[3] Defendant cites no statute which would be breached by conduct consisting of "the defendant and another gentleman having an altercation— looked like there *possibly might be* a fight." Assuming, but not deciding, that Sandifer's testimony might be construed as showing a violation of § 562.240 V.A.M.S. (disturbing the peace), this court holds that there was no error in admitting it.

"The general rule is that proof of the commission of separate and distinct crimes by the defendant is not admissible, unless the proof has a legitimate tendency to establish the defendant's guilt of the charge for which he is on trial. If evidence of other crimes reasonably tends to prove a material fact in issue, it should not be rejected because it incidentally proves defendant guilty of other crimes." *State v. Kilgore*, 447 S.W.2d 544, 547[3] (Mo.1969).

In *Kilgore* the court held that firing of shots from defendant's automobile during flight from the scene of a burglary, the latter being the offense on trial, was admissible although it constituted evidence of another crime. The court said that such evidence had a legitimate tendency to establish defendant's connection with the burglary.

In *State v. Smith*, 358 Mo. 1, 212 S.W.2d 787 (1948) the offense on trial was robbery. A knife had been used in its commission. Evidence that defendant was in possession of the knife and threw it away just before he was arrested by police officers was held admissible although the arrest took place two and one half hours after the robbery and three miles from it. The court pointed out that the evidence "was not incompetent on the ground it tended to convict defendant of a separate offense since it had probative value in connecting him with the crime for which he was being tried. *Evidence which shows the defendant possessed, or had access to articles or weapons with which the crime was committed is relevant under one of the exceptions to the general rule that the state is not ordinarily allowed to show other offenses.*" (Emphasis added) *Smith* at p. 789.[4] To similar effect see *State v. Boyer*, 476 S.W.2d 613, 617[2] (Mo. 1972). See also *State v. Thompson*, 280 S.W.2d 838, 841[7, 8] (Mo.1955).

Defendant's second contention has no merit.

■ Defendant's third contention is that the trial court erred in overruling his objection to a portion of the prosecutor's closing argument. In the statement of facts section of his brief, the only reference defendant makes to this episode is as follows: "The prosecutor, in his closing argument, made reference to the state's evidence as being uncontradicted."

On that fragile factual foundation defendant constructs the argument that this

---

3. Compare *State v. Romprey*, 339 S.W.2d 746, 750[6, 7] (Mo. banc 1969). It need not be determined whether there was a violation of an ordinance and, if so, whether such constituted "a separate offense." Defendant makes no mention of an applicable ordinance and this court does not take judicial notice of any such ordinance. *City of St. Joseph v. Roller*, 363 S.W.2d 609, 611[3] (Mo.1963).

4. "[E]vidence which is relevant to the case on trial is not inadmissible simply because it proves or tends to prove another offense. If evidence is relevant to the general issue of guilt or innocence, there is no valid reason to reject it merely because it may prove or tend to prove that the defendant committed some other crime or engaged in some other act or transaction. As long as there is some logical connection, other than the defendant's propensity to commit crime in general, between such other crime, act or transaction and the case on trial, the evidence may be received . . . [T]he following are cited as examples of other crimes which have been held to be relevant:

(a) Evidence which places the defendant in the locality of the crime on trial. . . .

(c) Evidence which shows the circumstances of defendant's arrest . . .

(e) Evidence related to exhibits which are themselves relevant."

Underhill's Criminal Evidence, 6th Edition, Vol. I, § 207, p. 619.

was a "direct reference to defendant's failure to testify" and was violative of Rule 26.08 V.A.M.R. and § 546.270 V.A.M.S.

The pertinent portion of Rule 26.08 reads: "If the accused shall not avail himself . . . of his . . . right to testify . . . on the trial in the case, it shall not be construed to affect the innocence or guilt of the accused, nor shall the same raise any presumption of guilt, nor be referred to by any attorney in the case, nor be considered by the court or jury before whom the trial takes place." § 546.270 contains the same language.

The flaw in defendant's contention is demonstrated by the following language appearing in *State v. Morgan*, 444 S.W.2d 490, 493[2] (Mo.1969):

"*State v. Craig*, Mo.Sup., 406 S.W.2d 618, 624[12], held that the comment that the testimony of the state's witnesses is 'uncontradicted' is not an improper comment on defendant's failure to testify, citing *State v. Willis*, Mo.Sup., 328 S.W.2d 593, and authorities, l. c. 595. This was followed by *State v. Hampton*, Mo.Sup., 430 S.W.2d 160, to the same effect."

In each of the following cases an argument to the effect that the state's evidence was "uncontradicted," at least in the absence of additional facts or circumstances, was held not vulnerable to the objection made here: *State v. Baker*, 439 S.W.2d 515, 516[1] (Mo.1969); *State v. Caffey*, 404 S.W.2d 171, 178[12] (Mo.1966); *State v. Thompson*, 425 S.W.2d 80, 85[9] (Mo.1968); *State v. Jones*, 491 S.W.2d 271, 274[4] (Mo. 1973); *Cloud v. State*, 507 S.W.2d 667, 669[6] (Mo.App.1974); Anno. 14 A.L.R.3d 723, 763.

In *State v. Frankoviglia*, 514 S.W.2d 536, 541[5] (Mo.1974) it is said:

"The key words of the rule and statute are 'accused' and 'testify,' and the test is whether the jury's attention was called to the accused's failure to testify. . . . The cases consistently require for reversal of a conviction that there be a direct, nonambiguous and unequivocal prosecutorial comment on the failure of the defendant to become a witness."

Defendant's third point has no merit.

■ Defendant's fourth contention is that the trial court "committed plain error in failing to declare a mistrial on the basis that the prosecutor had made reference in bad faith in his opening statement to an admission of guilt by defendant when the prosecutor knew such evidence was inadmissible."

During his opening statement the prosecutor told the jury that after the defendant was arrested he was taken to the police station where his rights were explained to him. The prosecutor then said: "Later that evening in the presence of Officer Sandifer, after the defendant had been fed, there in the presence of Officer Sandifer and the chief of police, this defendant stated that he had robbed this particular office earlier in the day."

Defendant's counsel made no objection to the quoted statement which is the one now under attack. Defendant's counsel proceeded to make his opening statement. The state then put on the following witnesses: William Bess, Janet Congiardo, Sharon Harris, and Officer Kelley. A recess was taken. After the recess, out of the presence of the jury, and at the close of the morning session, defendant's counsel orally moved "to suppress any evidence on that particular subject matter this afternoon." The motion referred to the statement allegedly made by the defendant to Officer Sandifer and the chief of police. Defendant's counsel stated to the court that "we filed a request for discovery" prior to the trial and "this is the first knowledge that I have that this defendant made any admission whatsoever." The transcript does not contain the "request for discovery" nor does it contain the state's response, if any, thereto.

The prosecutor then said "Well, I would like to say to the court that that was not brought to our attention until today, my having information about the conversation. Just for the record, I wish to state that."

The court sustained the motion to suppress. There was no request made for a mistrial or any additional relief.

Defendant says that the prosecutor's statement was made "in bad faith" but the record contains no factual support for that assertion. The defendant made a belated request for relief and received all the relief he then requested.

"Plain errors affecting substantial rights may be considered . . . on appeal, in the discretion of the court, though not raised in the trial court or preserved for review, or defectively raised or preserved when the court deems that manifest injustice or miscarriage of justice has resulted therefrom." Rule 27.20(c).

This court's review of the transcript, in light of the point raised, does not lead it so to "deem." See *State v. Berry*, 526 S.W.2d 92, 102–103[19–23] (Mo.App.1975). There is no "strong, clear showing" that injustice will result if the rule is not invoked. *State v. Embry*, 530 S.W.2d 401, 404[2] (Mo.App. 1975). The plain error rule "cannot be used as a vehicle for review of every alleged trial error which is not asserted or properly preserved in the trial court." *State v. Murphy*, 521 S.W.2d 22, 25[2] (Mo.App.1975).

Defendant's fourth contention has no merit.

There is no error in the matters of record reviewed pursuant to Rule 28.02 V.A.M.R.

The judgment is affirmed.

All concur.