**STATE of Missouri, Plaintiff-Respondent,**

v.

**Connie BIVENS, Defendant-Appellant.**

**No. 38527.**

Missouri Court of Appeals, St. Louis District, Division Three.

Sept. 20, 1977.

Motion for Rehearing and/or Transfer Denied Nov. 14, 1977.

Mary Elizabeth Dockery, Asst. Public Defender, 22nd Judicial Circuit, St. Louis, for defendant-appellant.

John D. Ashcroft, Atty. Gen., Paul Robert Otto, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

GUNN, Judge.

Defendant was convicted by a jury of first degree robbery with a dangerous and deadly weapon. Section 560.135 RSMo Supp.1975. Under the Second Offender Act the trial court sentenced him to 35 years imprisonment. Defendant's appeal charges that the pretrial identification procedure was so unduly suggestive as to deny him due process of law and that the subsequent in court identification of him was not shown to have an independent basis from the alleged maculated pretrial identification. Defendant also asserts that there was improper prosecutorial cross-examination of one of the defense witnesses. Defendant's charges are devoid of merit; we affirm the conviction.

Defendant was positively identified as the perpetrator of a sawed-off shotgun robbery at a St. Louis office of the Missouri Department of Revenue. In the early afternoon of February 13, 1976, two men armed with sawed-off shotguns entered the crowded Revenue office. The two men, one identified as the defendant, unobtrusively approached the bank of cashiers' windows and in a well synchronized gambit absconded with nearly $6,000 of State funds within a time period lasting from one to four minutes. Due to the celerity with which the robbers performed their evil task, they were able to escape before the long queues of people realized that a crime had been committed. However, at least one customer and three Revenue employees clearly observed the defendant wield and thrust his lethal weapon as he forced cashiers to give money to him.

The three Revenue Department employees, who were the victims of defendant's actions and who had undergone the frightening experience of having defendant's ugly weapon thrust at them, had a clear and unobstructed view of defendant as he performed his unlawful activities. Two employees identified defendant at a police lineup two days after the robbery. The third employee identified defendant at a police lineup about one week after the robbery. Approximately four months after the robbery, the customer was asked by the Circuit Attorney's office to view a photograph of a police lineup composed of five men. Upon seeing the photograph, the customer unhesitatingly and unequivocally identified the defendant as the robber he had observed in the Revenue office.

All four eyewitnesses positively identified the defendant at trial, even though at his counsel's request defendant was seated among the spectators in the courtroom rather than at the counsel table.

Defendant's defense was alibi that he was elsewhere at the time of the robbery—a defense which the jury refused to believe.

Defendant argues that the trial court erred in denying his motion to suppress identification testimony, because, under the circumstances, the pretrial identification procedures were so unduly suggestive as to deny him due process of law; that the trial court erred in permitting the subsequent in court identifications, because they were the product of the suggestive pretrial confrontations. Defendant asserts as the basis for his charge of undue suggestiveness the following:

"a. There was not a very good or long opportunity to view the robber;

b. The witnesses did not have their attention focused on the person of the robber at the time of the crime;

c. None of the witnesses gave a description of the robber to the police at the scene of the crime;

d. In at least one instance, several months passed between the time of the crime and the confrontation;

e. In all cases witnesses viewed the lineup believing that the line-up would contain the robber."

■ It is obvious that none of these factors, except the last, is in any way related to the suggestiveness of the lineup procedure. Rather, factors (a) through (d) relate to the opportunity of the identifying witnesses to observe and remember the physical features of the robber—the certainty of the identification. Circumstances relating

to the certainty of the identification affect only the credibility of the witnesses' testimony and not the admissibility. *State v. Bevineau,* 552 S.W.2d 67 (Mo.App.1977); *State v. Davis,* 529 S.W.2d 10 (Mo.App. 1975). Such factors are, however, relevant in determining whether the witnesses' in court identification has an independent basis once it is shown that the pretrial confrontation was unconstitutionally tainted. See *Neil v. Biggers,* 409 U.S. 188, 34 L.Ed.2d 401, 93 S.Ct. 375 (1972). *State v. White,* 549 S.W.2d 914 (Mo.App.1977); *State v. Davis,* 547 S.W.2d 482 (Mo.App. 1976). We must first, therefore, examine the pretrial confrontations to determine if they were so suggestive that an independent basis must be shown to support the in court identifications. *State v. Barnes,* 537 S.W.2d 576 (Mo.App.1976).

We have reviewed the testimony of the identifying witnesses regarding the circumstances surrounding the pretrial confrontations, as well as the color photograph of the questioned lineup, and we find that there was no undue suggestiveness.

█ In determining whether a pretrial confrontation between the accused and the identifying witnesses is so tainted by suggestive factors as to violate the accused's right to due process of law, we view the totality of circumstances surrounding the confrontation. *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *State v. Macon,* 547 S.W.2d 507 (Mo.App.1977); *State v. Murphy,* 508 S.W.2d 269 (Mo.App.1974). Each case must be judged on its own facts to ascertain if the confrontation was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. *Neil v. Biggers, supra; State v. Parker,* 458 S.W.2d 241 (Mo.1970); *State v. Davis, supra.*

█ Defendant makes no claim that the police, the prosecutor or anyone else tried to prompt, cajole or otherwise influence the identifying witnesses at the lineup or at the subsequent photographic viewing by the customer. It is clear from the testimony of the identifying witnesses regarding the cir-

cumstances of the pretrial confrontations that such a claim would be totally unavailing. It is evident from ocular examination of the color photograph of the lineup that each participant, though not identical to each other, is very similar in appearance. Each man is of medium build and dressed in casual clothing. Each has facial hair, and three have beards. All appear to be of approximately the same age. It is true that defendant is the shortest of the five participants, however, the disparity in height is neither great nor obvious and affords no basis for relief for defendant. See *State v. Proctor,* 535 S.W.2d 141 (Mo.App. 1976); *State v. Jones,* 528 S.W.2d 14 (Mo. App.1975).

█ Mere showing of minor dissimilarities in physical appearance of lineup participants is insufficient to establish impermissible suggestiveness. *State v. Gillum,* 540 S.W.2d 167 (Mo.App.1976). Persons in a lineup will never be identical to one another. The law does not require exact conformity to ensure an untainted identification procedure. *State v. Proctor, supra.* The participants in a lineup need only be reasonably similar to one another so that no one individual clearly stands out from the rest. *State v. Davis, supra; State v. Dayton,* 535 S.W.2d 479 (Mo.App.1976). "Police stations are not theatrical casting offices; a reasonable effort to harmonize the lineup is normally all that is required." *United States v. Lewis,* 547 F.2d 1030, 1035 (8th Cir. 1976). And here, the individuals comprising the lineup tableau were rather uniform in appearance; the lineup was fair and comported with necessary standards, *State v. Davis, supra.*

█ Defendant's claim that the lineup was tainted because "(e) [i]n all cases witnesses viewed the lineup believing that the lineup would contain the robber," does not provide a basis for finding the lineup to be improper. It is only natural that victims of a crime asked to view a lineup would suspect it would contain the criminal. Such suspicion or expectation in the absence of other suggestive factors will not render the

lineup constitutionally infirm. See *State v. Armbruster,* 541 S.W.2d 357 (Mo.App.1976).

■ Even if we were to assume there had been some undue suggestiveness in the pretrial confrontation, the in court identifications of the four eyewitnesses were shown to be firmly grounded on their observation of defendant at the time of the robbery. Where an in court identification is based on personal observation independent from any pretrial confrontation, such in court identification is proper and admissible. *State v. Taylor,* 456 S.W.2d 9 (Mo. 1970); *State v. Johnson,* 522 S.W.2d 106 (Mo.App.1975). Each identifying witness had an unobstructed view of the robber for periods ranging from fifteen seconds to over one minute, from a distance of only three feet or less. Under these circumstances there was ample time for the robber's appearance to be impressed upon the witnesses' memory. See *e. g., United States v. Mooney,* 417 F.2d 936 (8th Cir. 1969) (witness observed criminal for 15 seconds on 14 inch television screen); *State v. Young,* 534 S.W.2d 585 (Mo.App.1976) (witness observed criminal for 3 seconds at a distance of 30 feet); *State v. Davis,* 530 S.W.2d 709 (Mo.App.1975) (witness observed criminal for 10 seconds at a distance of 8 feet).

■ The fact that the victims of the crime were affected emotionally by the robber's assault on their persons with a deadly weapon does not render their identification inadmissible so long as the emotional reaction was not of "such a degree as to impair (their) testimonial competency as a matter of law," *State v. Armbruster, supra* at 361. The record gives no indication of such impairment, and, in fact, all testimony by the eyewitnesses is to the contrary. Both the pretrial and the in court identifications *were properly admitted into evidence.*

■ Defendant's second allegation of error is that the trial court improperly denied his motion for a mistrial after allegedly improper and prejudicial cross-examination of one of his alibi witnesses, Rose Nance. On direct examination, the witness testified that defendant was at her apartment on morning and afternoon of the robbery. On cross-examination the Assistant Circuit Attorney asked if one week prior to the trial she had spoken to his investigator and told him she did not want to testify. Her response was:

"A. I did tell him that. I did not want to be involved, I did not want to testify.

"Q. Did you mention a specific reason?

"A. Yes, because I told him I don't like to be involved in things like that, and when you testify sometimes it causes a lot of trouble, and I don't want to be involved because I have to raise four children.

"Q. Did you tell him that you didn't want to testify because you knew that Connie Bivens was good for this robbery?

"MR. COFMAN: [Defendant's counsel] I will object to that.

"THE WITNESS: No, I didn't."

At this juncture, defendant's counsel moved for a mistrial. His objection to the testimony was sustained, and the jury was instructed to disregard the question. The motion for a mistrial was denied. Immediately prior to the objection the Assistant Circuit Attorney in response to a similar objection explained out of the hearing of the jury that the witness "told my investigator she didn't want to testify because everybody knew he was good for the robbery and she was going to try to avoid it and try to be gone so she wouldn't have to testify." The prosecutor explained that he was offering the testimony to show interest, bias and prejudice and that the testimony was elicited to test the witness' credibility.

Defendant asserts that the logical inference from the line of questioning was that "in light of the witness' earlier statement that she did not want to testify because testifying might cause trouble for herself and her children, was that someone on appellant's behalf had threatened the witness." We believe that such an inference is remote and not the sort of direct, improper

and prejudicial comment that would require declaration of a mistrial. See *State v. Hicks,* 535 S.W.2d 308 (Mo.App.1976).

Judgment affirmed.

KELLY, P. J., and WEIER, J., concur.