STATE of Missouri, Respondent,

v.

Gary Steven MORGAN, Appellant.

No. 10931.

Missouri Court of Appeals,
Southern District,
Division One.

Jan. 11, 1980.

John D. Ashcroft, Atty. Gen., Paul Robert Otto, Asst. Atty. Gen., Jefferson City, for respondent.

No appearance on oral argument for appellant.

TITUS, Presiding Judge.

Defendant was jury-convicted of the September 6, 1977, first degree robbery of the assistant manager of Wendy's Old Fashioned Hamburgers (Wendy's) located on West Sunshine in Springfield. He was court-sentenced to imprisonment for a term of eight years in accordance with the verdict. Upon this appeal by defendant, we recast the evidence in the light most favorable to the verdict. State v. Hegwood, 558 S.W.2d 378, 379[1] (Mo.App.1977).

Near 7:25 p. m. on the date in question, Wendy's employees Susan (cashier), Kay (sandwich maker) and Marlin (assistant manager) were at their places of hire when a man wearing a "blue denim-type baseball cap" and a white T-shirt entered the establishment. He was armed with a pistol resembling a .45 caliber automatic. As he approached Susan, the man placed the pistol alongside the register so it could not be seen generally and pointed it at her. Susan summoned Kay to "come here a second," and when Kay arrived at the register the bandit admonished the two women to "act natural." When Kay returned to her sandwich making, five feet distant from the cash register, Susan beckoned Marlin, who was told by the robber to put all of the register money in a paper sack or "I'll blow your head off." Unsurprisingly, Marlin took all the paper money from the register, placed it in a white sack which had "Wendy's Old Fashioned Hamburgers" printed on it in red and white lettering and handed it to the robber who immediately vacated the restaurant. Upon reaching the outside of the building, the robber was surreptitiously seen by Marlin to enter a white over green Pontiac Firebird which had been backed into a parking space. As the vehicle departed at a high speed, Marlin observed the

vehicle "had a taillight out" and "had mud slung all over the back end of it." Susan, Kay and Marlin later testified they had close observation of the robber for a period of from three to five minutes.

At the time of the robbery, Corporal McCutchen of the Missouri State Highway Patrol was east of Springfield. Via radio, he received news of the robbery and the fact that the robber was driving a white over green Pontiac Firebird with one taillight out and a dirty license plate. The radio report described the long-haired, mustached robber as being in his twenties and dressed in a white T-shirt, blue jeans and boots. McCutchen drove to and parked atop the interchange of U.S. Highways 60 and 65 to oversee traffic traveling from Springfield. Near 7:37 p. m. the corporal observed a southbound white over green 1968 Pontiac traveling 80 to 85 miles per hour. As the vehicle passed, the corporal saw that one of its taillights was out. After a chase of over six miles, the Pontiac was halted. The driver was the defendant and he fit the radio description of the robber. Defendant was removed from the Pontiac and made to lie prone upon the ground until radioed-for assistance arrived. When help came, Corporal McCutchen, from outside the Pontiac, saw on the back floorboard of defendant's car a Wendy's bag (later found to contain $193 in currency) and a blue denim cap. These items were seized and defendant formally arrested. A search of the Pontiac resulted in finding a Crossman $CO_2$ pistol under the front seat. It had the appearance of a .45 caliber. automatic pistol.

▮ Defendant's first point relied on complains that the trial court erred in overruling his motion to suppress the in-court identification of defendant by Wendy's three employees "because said testimony was tainted by the suggestive manner in which [the] lineup was conducted in that it was calculated to produce irreparably harmful misidentification." As written, the point violates the mandatory requirements of Rule 84.04(d), V.A.M.R. Without resorting to the argument portion of the brief,

something we are not required to do [*State v. Hulsey*, 557 S.W.2d 715, 717[1] (Mo.App. 1977)], there is no clue as to "wherein and why" it is claimed the way the lineup was conducted tainted the in-court identification testimony or was calculated to produce irreparably harmful misidentification.

▮ But assuming this point was properly before the court, which it is not, it would be ruled against defendant. "Even if lineup procedures are suggestive, and the evidence here does not support a finding of undue suggestiveness, identification testimony by a witness is admissible if there exists an independent source of the identification. 'The presence of an independent source will serve to remove any taint that might result from a suggestive confrontation, (cites omitted).' *State v. Davis*, 529 S.W.2d 10, 14 (Mo.App.1975). '[I]t is no longer open to argument in Missouri that, even though the . . . line-up identifications are tainted or in some way suggestive, where there is an untainted, positive in-court identification made upon a factual basis independent from such . . . line-up procedures, such in-court identification is proper. (cites omitted).' *State v. Ealey*, 515 S.W.2d 778, 780 (Mo.App.1974). This principle applies to testimony about both a pretrial identification [*Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972)] and an in-court identification [*State v. Davis*, supra; *State v. Ealey*, supra; *State v. Bivens*, 558 S.W.2d 296 (Mo. App.1977)]. If there is proof of an independent source of observation on which a witness has based his identification testimony, the court need not examine the details of the questioned lineup procedures for impermissible suggestiveness. *State v. Ross*, 502 S.W.2d 241 (Mo.1973); *State v. Mitchell*, 558 S.W.2d 383 (Mo.App.1977)." *State v. Csolak*, 571 S.W.2d 118, 123–124[9–11] (Mo.App. 1978).

As stated in *Neil v. Biggers*, supra, 409 U.S. at 199, 93 S.Ct. at 382, 34 L.Ed.2d at 411, "the factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the

witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation."

■ In the instant case, and without the necessity of recasting details, the Wendy's employees had an unobstructed, close-up view of the criminal's face and shoulders in a well lighted room for a period of from three to five minutes. Each witness knew the criminal was armed, bent upon robbery, and, at least two thereof, were warned he would "blow your head off" if his orders went unobeyed. Their high degree of attention cannot be doubted under such circumstances. The witnesses were able to provide the police with reasonably accurate and detailed descriptions of the robber and, at both the line-up and trial, each witness was unequivocal and unhesitating in identification of defendant. The length of time between the crime's commission and the line-up identification (wherein none harbored doubt as to the identity of the robber) was less than 24 hours. At trial their identification was equally positive and unqualified. Their testimony established a certain in-court identification and the existence for a substantial independent basis of the identification testimony. Ergo, the trial court did not err in overruling defendant's motion to suppress the witnesses' identification testimony.

In his second point defendant contends the trial court erred in failing to suppress as evidence the items which Corporal McCutchen seized from his automobile because defendant's "arrest and stopping of his automobile was without probable cause or other lawful authority, in that the defendant's automobile was not sufficiently similar to the automobile reportedly used in the robbery."

■ It is unnecessary for us to repeat the radio-relayed information to Corporal McCutchen regarding the description of the robber and the vehicle he was driving as that has previously been set forth in the third paragraph of this opinion, supra. Arrests based upon information received from radio transmissions are proper [*State v. Ward*, 457 S.W.2d 701, 706 (Mo.1970)] provided that the officer, at the moment of arrest, has probable cause to make it, i. e., whether at that moment facts and circumstances within his knowledge and of which he has reasonably trustworthy information is sufficient to warrant a prudent man in believing that the arrestee has committed or is committing a crime. *State v. Perry*, 499 S.W.2d 473, 475[2] (Mo.1973).

■ In our judgment, the information possessed by Corporal McCutchen, and his observation of the speeding automobile a few minutes after the robbery had been committed, gave him probable cause to arrest the defendant. Furthermore, his subsequent search of the automobile by obtaining the plain-view items from the rear of the car and the pistol from beneath the driver's seat was sufficiently limited in scope to satisfy constitutional requirements. *United States v. Rainone*, 586 F.2d 1132, 1135[2] (7th Cir. 1978).

■ Actually defendant's argument under his second point does not dispute what we have said and he limits his claim of lack of probable cause to the fact that the Pontiac Firebird was a 1968 model rather than a 1972 model as reported to the police. This is a most tenuous argument in face of the fact that the description of the vehicle given the police exactly fit the description of the vehicle defendant was driving except for the year model and the fact that Corporal McCutchen testified the basic silhouette of the two models was the same. Defendant's second point is denied.

Defendant's third and last point relied on claims the trial court erred in failing to declare a mistrial or to grant a new trial because of a volunteered statement made by Corporal McCutchen. After testifying how he had observed the white over green Pontiac Firebird traveling 80 to 85 miles an hour at the interchange and how, after a chase of over six miles in the patrol car with red light flashing, he had overtaken and halted the pursued vehicle, Corporal

McCutchen testified as follows: "Q. (By Assistant Prosecuting Attorney) You say to catch him you had to run at a high rate of speed. How fast were you going, Corporal McCutchen? A. Was running over a hundred miles an hour, sir. Q. And for what distance, sir? A. Several miles, there. *Because I called back and told my radio division I thought he was trying to run from me.* (our emphasis) Q. And when you—(Defense Counsel)—If it please the Court, we object to that, and ask that it be stricken, and—and we ask to approach the Bench. The Court. You may. But the court does sustain the objection, and does sustain the request that it be stricken. The jury is admonished to disregard the statement of the witness, and not to consider it."

At the bench conference the court over-ruled defendant's request for a mistrial. Also at the conclusion of Corporal McCutchen's testimony and at the request of defendant's counsel, this occurred: "The Court: At this time the Court does admonish the jury to disregard a portion of the previous witness's testimony, Corporal McCutchen, the portion of his testimony in which he stated that he had, in a radio dispatch to the dispatcher, had stated that it appeared to him the person was attempting to flee from him, or words to that effect. The Court did sustain the objection to that as not being proper evidence for this case, and the Court does admonish you to disregard it, and for you—that you are not to consider that statement as any evidence in this case, or having any bearing on your decision."

 Where a wrongfully made voluntary statement is uttered by a witness, declaring a mistrial or granting a new trial on account thereof, especially after a thorough admonition by the court to the jury to disregard it, usually lies within the sound discretion of the trial judge. *State v. Mallory*, 423 S.W.2d 721, 723–724[3] (Mo.1968). In this instance, the state made a strong case on the robbery charge apart from the objected-to testimony. "Error which in a close case might call for reversal may be disregarded as harmless where the evidence of guilt is strong." *State v. Fleming*, 577 S.W.2d 174, 177[7] (Mo.App.1979). Furthermore, the conclusory statement volunteered by Corporal McCutchen was, in this writer's opinion, only an expression of what the properly adduced testimony made self-evident. In view of the strong admonitions given the jury by the trial court, the error, if any, was not prejudicial to defendant.

Judgment affirmed.

All concur.