**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Ronnie V. GREEN, Defendant-Appellant.**

**No. WD 32812.**

Missouri Court of Appeals,
Western District.

April 13, 1982.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied June 1, 1982.

Sloan R. Wilson, Kansas City, for defendant-appellant.

John Ashcroft, Atty. Gen., Kelly Klopfenstein, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Before SOMERVILLE, C. J., and WASSERSTROM and LOWENSTEIN, JJ.

WASSERSTROM, Judge.

Defendant appeals from his conviction by a jury of second degree robbery and a resulting sentence of eight years. We affirm.

Shortly after midnight on September 19, 1979, a man later identified as defendant entered D.J.'s Liquors and asked the two employees on duty if he could speak with the owner. One of the employees, Debra Johnson, told him that the owner, Daniel Johnson, was in the back. Defendant then went to the back of the store and asked Johnson whether he could speak with him privately. Johnson, who had seen defendant in the store as a customer on other occasions, directed him to his office. Once the two men were in the office, defendant pointed a pistol in Johnson's face, forced him to lie face down on the floor and tied his hands behind him. Defendant removed two diamond rings, some cash, and a wallet from Johnson's person and then took additional cash from a desk drawer. Despite defendant's threat to "blow [his] head off," Johnson repeatedly gave him an incorrect combination for the safe. Stymied in an effort to open the safe, defendant left the office and walked out past Debra and the other employee, wishing them a nice evening.

Johnson managed to free his hands, grabbed a shotgun and ran outside where he spotted defendant slumped down in the seat on the passenger side of an automobile. Due to the young woman driver being in his line of fire, Johnson did not shoot until after the vehicle left the parking lot, at which time he fired at least twice in an unsuccessful effort to disable the vehicle.

While Johnson was running out of the store with his shotgun, the two employees inside the store set off the burglar alarm. Police quickly arrived and took statements. The statements taken by the police indicated that the robber was a black man, 22 to 23 years old, 5'7" to 5'8" in height, weighing 165 pounds, with close-cropped hair. The statement taken from Johnson further said that the robber had two gold upper front teeth, one with a diamond in it. Defendant does not have such dental features. Johnson acknowledged telling one of the officers that the robber "might" have gold teeth, but he testified to telling a second officer to delete that portion of the description because he was not sure about the robber having any gold teeth.

Soon after the robbery Johnson received a number of anonymous telephone calls saying that the robber was Ronnie Green, and Johnson passed that information on to the police. At that time, Johnson did not associate the name Ronnie Green with defendant or any other specific individual.

On September 23, 1979, four days after the robbery, the police came to the store with an array of photographs. Debra made a positive identification of defendant's photograph as being that of the robber. Johnson testified that although he recognized the robber among those depicted, he did not make an identification from the photographs because he wanted to view in person the man who robbed him.

Defendant was subsequently apprehended. A lineup was held October 11, 1979. Johnson viewed the three man lineup and "immediately" selected defendant as the robber. Debra also unequivocally identified the defendant at the same lineup. Both of these witnesses testified to their pretrial identifications and also positively identified defendant in court as the robber.

The state also offered Teresa Arnold as a witness. She testified that she was the owner of the automobile parked outside D.J.'s Liquors on September 19, 1979, that defendant had asked her to stop so he could go into the liquor store to make change, that he came out after some period of time, and as they started to drive away, someone came out of the store and shot at the back of the car.

On this appeal, defendant urges the following points: (1) that the trial court erred in permitting evidence of the pretrial identifications; and (2) that the court erred in permitting the in-court identifications.

With respect to these two points, defendant attempts to distinguish the rules of law applicable to the two types of identification. He asserts that if a pretrial identification is shown to have been the result of undue suggestion on the part of the police, then the identification becomes inadmissible per se. He says that, in contrast, the undue suggestion can be overcome us to an in-court identification if the prosecution can successfully carry the burden of showing that the in-court identification is reliable despite the taint of the prior suggestion. In support of this purported distinction, defendant cites and relies upon *Gilbert v. State of California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967).

■ While *Gilbert* and also *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972) contain some language lending credence to defendant's legal argument, that construction has since been negated by *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). *Manson* makes it abundantly plain that the same rules apply to both pretrial and also in-court identifications. With respect to both, a two step analysis applies. The first question to be answered is whether the police did engage in overly suggestive tactics; and, if that first question be answered in the affirmative, then the second question is whether the identification is nevertheless

reliable. The latter question of reliability is to be adjudged under the totality of the circumstances, including (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. *Neal v. Biggers, supra; State v. Higgins,* 592 S.W.2d 151 (Mo.banc 1979); *State v. Charles,* 612 S.W.2d 778 (Mo.banc 1981); *State v. Hayes,* 624 S.W.2d 488 (Mo.App.1981); *State v. Sanders,* 621 S.W.2d 386 (Mo.App.1981). This analysis and these criteria have been regularly applied to pretrial as well as in-court identification. See for example, *State v. Montgomery,* 588 S.W.2d 80 (Mo.App.1979); *State v. Morgan,* 593 S.W.2d 256 (Mo.App. 1980).

Undertaking the initial inquiry as to whether or not there was undue suggestion, none such is disclosed by the evidence. It is true that witness Johnson at one early point stated that the robber had two gold teeth, one of which had a diamond, and at a later time O'Conner, an investigator for the prosecutor, asked Johnson whether he was sure in that regard because defendant did not have the gold teeth described. However, Johnson had corrected his description before his said conversation with O'Conner, and the conversation with O'Conner also took place after the lineup identification. The correction as to the description by O'Conner therefore was not instrumental in obtaining an identification and is therefore immaterial.

Defendant stresses also the anonymous telephone calls received by Johnson. However, Johnson's receiving of the name Ronnie Green did not relate at that time to any given person in his mind and played no part in his identification of defendant.

Defendant makes a number of complaints about the composition of the lineup as being overly suggestive. First of all he complains that a lineup of three is too small in number. However a lineup of that number has been found unobjectionable. *State v. Hayes, supra; State v. Abrams,* 597 S.W.2d 230 (Mo.App.1980); *State v. Montgomery,* 596 S.W.2d 735 (Mo.App.1980). Defendant objects to the other two men in the lineup being considerably taller than defendant, but that discrepancy was held immaterial in *State v. Hayes, supra; State v. Abrams, supra; State v. Greer,* 609 S.W.2d 423 (Mo.App.1981); and *State v. Bivens,* 558 S.W.2d 296 (Mo.App.1977). Defendant also complains that defendant was the only one clad in jail clothing and shower thongs; but somewhat similar differences in clothing has also been held immaterial. *State v. Abrams, supra; State v. Terry,* 582 S.W.2d 337 (Mo.App.1979). It must be recognized that substantial differences may occur in the characteristics of the various subjects placed in a lineup; but as has been repeatedly observed, "[p]olice stations are not theatrical casting offices." *E.g.: State v. Willis,* 577 S.W.2d 655 (Mo.App.1979).

Defendant also complains that a prior identification from a photographic array deprives a subsequent lineup of dependability. However, lineup identifications following photograph arrays have frequently been accepted. *State v. Greer, supra; State v. Hayes, supra; State v. Sanders, supra.*

Defendant further complains that in requesting the witnesses to come in for the lineup identification, a policeman said that the police had a "possible suspect" in custody. That statement has no significance. *State v. Sanders, supra; State v. Hayes, supra; State v. Armbruster,* 541 S.W.2d 357 (Mo.App.1976); *State v. Bivens, supra.*

Defendant complains still further that after the lineup, one of the policemen told Johnson he had picked out the right man. Coming as it did after the identification had already been made, it did not influence the pretrial identification. With respect to possible influence on the in-court identification, that was simply a matter for jury consideration.

None of the items mentioned above nor all of them in combination show undue sug-

gestive tactics on the part of the police. On that basis alone, defendant's points on appeal should be overruled.

■ But even if there had been over suggestion, the identifications in this case were shown to be reliable. The uncontroverted evidence shows that the witnesses had an unobstructed view of the robber's face at close range under good lighting conditions. Also, the witnesses had seen defendant in the store as a customer on several occasions, so that they were already acquainted with his appearance.

A high degree of attentiveness by Johnson may be inferred from the evidence that the robber repeatedly threatened him with death or serious bodily injury. Attentiveness by Debra is shown by her testimony that as she watched defendant walk past her leaving the store, he held himself in a somewhat awkward manner.

■ The description given by the witnesses immediately after the robbery was reasonably accurate. Although Johnson was initially mistaken about the gold teeth with the diamond, this initial error was retracted upon Johnson's own further reflection. A discrepancy in the original description given is not controlling. *State v. Sanders, supra.*

Both witnesses demonstrated a high level of certainty in identification at the lineup and in court. While Johnson did not voice an identification from the photographic array, he later explained that although he did recognize the man who robbed him, he wanted to see that individual in person in order to make a positive identification. The length of time between the robbery and the photographic array was only four days and the lineup occurred in 22 days. This is a reasonably close period of time. *See, State v. Charles, supra.*

■ In sum, the identifications were free of undue suggestion and in any event were shown to be sufficiently reliable to warrant submission to the jury. Whether the identification testimony was in fact sufficiently reliable to be worthy of belief was in largest part a matter for determination by the jury. *Manson v. Brathwaite, supra; State v. Sanders, supra.*

Affirmed.

All concur.