**STATE of Missouri,**
**Plaintiff-Respondent,**

v.

**Van THOMAS, Defendant-Appellant.**

**No. 49005.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Jan. 14, 1986.

Motion For Rehearing and/or Transfer
Denied Feb. 18, 1986.

Application to Transfer Denied
March 25, 1986.

Carrie Diane Francke, Jefferson City, for plaintiff-respondent.

Mark V. Clark, Columbia, for defendant-appellant.

SIMON, Presiding Judge.

Defendant, Van Thomas, was convicted in the Circuit Court of the City of St. Louis of three counts of robbery in the second degree, § 569.030 RSMo 1978. He was sentenced to 30 years imprisonment on each count, said sentences to run concurrently.

On appeal, defendant contends that the trial court erred in: (1) denying defendant's motion to suppress out of court identification of the three victims; (2) denying defendant's motion for judgment of acquittal at close of all evidence based upon insufficient evidence; (3) denying defendant's motion to dismiss for lack of jurisdiction based upon venue; (4) using defendant's suspended impositions of sentence to enhance defendant's sentences; (5) overruling defendant's objection to the prosecutor's statement in closing argument referring to defendant's right not to testify. We affirm.

At approximately 10:00 or 11:00 p.m. on September 17, 1983, Brian Scallan, Joseph "Greg" Gullick, and Dan Luna went to the Spaulding Racquetball Club on Hanley Road in St. Louis County to attend a Parks College fraternity party. They arrived in a car driven by Larry Billick. Scallan, Luna, and Gullick left the party at approximately

1:00 a.m. Because Billick was too intoxicated to drive and would not allow anyone else to drive his car, the three decided to walk. They walked onto Highway 40 from Hanley, but realizing this was not safe they began to look for a place to phone Scallan's roommate. After walking east at a fast pace for approximately 15 to 20 minutes, a white 1964 four-door Chevrolet pulled over just west of the Big Bend overpass on Highway 40. A man, later identified as Arthur Robinson, got out of the car and offered the three men a ride in exchange for gas money. They rejected the offer but Robinson persisted. Scallan testified that Robinson said in a "mean" fashion, "Get in the fucking car." Each of the three men testified they got into the car because they were afraid of being physically injured. Gullick got into the car first. Then Robinson grabbed Luna by the arm and guided him into the backseat. Robinson then entered the automobile's back seat followed by Scallan.

The car drove eastbound on Highway 40 at a rate of approximately 40 to 55 miles per hour. Scallan testified that after approximately 5 minutes, Robinson asked him to get his wallet out and give Robinson his money. Scallan also said that as he reached for his wallet Robinson told him not to pull a knife or he would "screw him up." Robinson then asked Gullick and Luna for their money. After taking $6.00 from Scallan's wallet, Robinson threw the wallet out of the car window around Deaconess Hospital. Scallan testified that Robinson took Gullick's money at the location of McCausland and Highway 40.

Robinson noticed Gullick putting his watch in his pocket. After Robinson said "Is that a watch?", the driver, later identified as defendant, turned around, held out his hand and screamed, "Give me the watch." After Gullick gave the driver his watch, the third man in the car, a passenger in the front seat, said "Let me out, this is uncool, I don't want any part of it." The defendant pulled over at Kingshighway and Oakland to let the passenger out and then returned to Highway 40 eastbound. Again Robinson and the defendant demanded Luna's money. Robinson then reached under the car's front seat. The defendant said emphatically, "Don't get the gun out, you don't need the gun, leave the gun there." Because Luna was frightened, he gave them his money. The defendant and Robinson then released the men.

At approximately 1:15 a.m. on September 18, 1983, Officer Charles Keifer of the St. Louis Police Department saw Scallan, Luna and Gullick climbing the incline from Highway 40 near the Boyle Avenue overpass. When Officer Keifer saw the men flagging him down, he pulled his patrol car over to them. The three victims told him they had been robbed and reported the license number of the robber's car, PZP-442. Kiefer radioed in a brief description of the robbers given by the victims. The victims described the driver as a black male in his twenties, about 5'9", and 170 pounds.

At a lineup held on September 19, 1983, the three victims identified Arthur Robinson as the man in the back seat during the robbery. On September 20, 1983, the three victims viewed a photographic array of individuals resembling the description of the driver of the car. On September 23, 1983, the three victims viewed a lineup to identify the driver. After each man in the lineup spoke the words "give me the watch," each of the three victims identified the defendant as the driver of the car.

Amrah Johnson testified at trial that on Saturday, September 17, 1983, he owned a white, four-door, 1964 Chevrolet. Johnson stated that he drove with Robinson in his car to the house of some of Robinson's friends. Johnson spent the night at his house. According to Johnson, Robinson told him the next morning that he had driven Johnson's car the previous night to Webster and Richmond Heights.

At the close of the evidence defendant's motions for acquittal or a new trial were denied. Defendant was convicted of three counts of robbery and sentenced to 30 years on each count to run concurrently.

In his first point on appeal, defendant alleges that the trial court erred in admit-

ting the pretrial identification testimony by the victims in that the victims did not have a sufficient basis for a reliable identification, independent of an impermissibly suggestive photographic array identification. Defendant contends that the pretrial identification procedure was impermissibly suggestive in that the police showed one picture to the victims, suggesting that it was the photograph of the driver of the car.

At trial, Gullick, Luna, and Scallan each testified that the police did not influence them in the photo array selection. Gullick testified that he had been shown several photos. Scallan said he could not remember the number of photos he was shown. Luna testified that he was mistaken when he said in his deposition that he had been shown only one photo and that he had been shown several photos. Officer Hogan testified that four photographs were shown to the victims and the state introduced an array of four photographs into evidence. Defendant had full opportunity to cross-examine the victims and any inconsistencies in their testimony is for the jury to weigh. *State v. Carey*, 486 S.W.2d 443 (Mo.1972). Defendant has stated no other allegations of police interference or suggestiveness in the photographic display. Assuming defendant's allegation of only one photo to be true, the showing of a single photograph of a defendant to a witness where there is no improper comment or activity on the part of the officer showing the photograph does not result in impermissible suggestiveness. *State v. McGrath*, 603 S.W.2d 518, 520 (Mo.1980).

Further there is no want of due process in the trial court's admission of the witnesses' pretrial identifications if a reliable independent basis for admission exists. The reliability of identification testimony is determined in light of the "totality of circumstances" including: (1) the opportunity of the witnesses to view the criminal at the time of the crime; (2) the witnesses' degree of attention; (3) the accuracy of the witnesses' prior description of the criminal; (4) the level of certainty demonstrated by the witnesses at the confrontation; and (5) the

length of time between the crime and the confrontation. *State v. Charles*, 612 S.W.2d 778, 780 (Mo. banc 1981). This rule applies to both pretrial and in-court identifications. *State v. Green*, 635 S.W.2d 42, 44 (Mo.App.1982). Applying this analysis, we find the pretrial identification to be reliable. Both Luna and Gullick testified they had an opportunity to view the defendant as they entered the car. Luna also stated they were in the car for 15 to 20 minutes. Scallan testified he was able to get a good view of the driver on three occasions. At one time, the defendant turned around to face the victims as he spoke. A high degree of attentiveness may be inferred from the testimony that the robbers repeatedly harassed the victims and the parties were in close proximity within the car. Although the events took place at night, Gullick testified that at times the car was well lit by street lights and headlights. The victims demonstrated a high level of certainty in identification of defendant at the line-up and in court. After hearing him speak in the line-up, each witness was sure the defendant was the driver of the car. The length of time between the robbery and the photo array was three days and the line-up occurred in nine days. The defendant alleges unreliability in that the witnesses' initial description was brief and inconsistent with the defendant's physical characteristics. He points out that subsequent pretrial descriptions were also inconsistent. The witnesses described the driver as tall, about 5'9" while the defendant described himself at 5'5" in a police report. Possible discrepancies in descriptions are for the jury. *State v. Cannon*, 486 S.W.2d 212, 214 (Mo.1972). The victims, during the event, did not view the defendant in any position other than a sitting position. Additionally, this inaccuracy in height estimation is not related to the claims of suggestiveness in the photo identifications and is not significant under the circumstances. *State v. Sanders*, 621 S.W.2d 386 (Mo.App. 1981). Therefore, since the identifications were reliable and the in court identification had independent basis for admission, the

evidence was properly admitted. Point I is without merit.

Defendant next contends the trial court erred in overruling his motion for judgment of acquittal in that the evidence was insufficient to prove beyond a reasonable doubt that he committed the robbery. The scope of review in criminal proceeding extends only to a determination of whether there is sufficient evidence to support the verdict. The jury weighs the evidence and determines if the charge has been proven beyond a reasonable doubt. We do not. *City of Kansas City v. Oxley*, 579 S.W.2d 113, 115 (Mo. banc 1979). To determine whether the evidence is sufficient to support the verdict, we view the evidence and its reasonable inferences in a light most favorable to the verdict, disregarding contrary evidence. *Id.* at 115. The victims observed the defendant while in the car for approximately 15 to 20 minutes. Twice before trial, the victims positively identified him as the driver, once in a photo array three days after the robbery and again during a line-up nine days after the robbery. There was no question raised as to the sufficiency of the other evidence. We find that the victims' positive identifications of the defendant is sufficient. *State v. Cannon*, 486 S.W.2d at 214.

In his third point, defendant contends the trial court erred in overruling his motion to dismiss for lack of jurisdiction because the court did not have venue in that the state failed to prove the robberies were committed in the City of St. Louis. We disagree. Venue is not an integral part of the offense, and need not be proven beyond a reasonable doubt or by direct evidence. Venue is sufficiently proved if the jury reasonably could have found from the facts and circumstances that the alleged crime occurred in the city. § 541.033 RSMo 1978; *State v. Valentine*, 506 S.W.2d 406, 410 (Mo.1974).

Scallan testified that defendant's accomplice, Arthur Robinson, took six dollars from Scallan's wallet and then threw the wallet out of the car window near Deaconess Hospital in the City of St. Louis. He also testified that Gullick's money was taken on Highway 40 at McCausland, also in the City of St. Louis. Gullick testified that, as the car continued to travel east on Highway 40 further into the city, the appellant took his watch. Scallan also stated that the second passenger left the car near the intersection of Oakland Avenue and Kingshighway Boulevard in the City of St. Louis. In addition, Officer Kiefer testified he found the witnesses in the area of Boyle Avenue and Highway 40 in the City of St. Louis. This evidence is sufficient to support the finding that the crime occurred in the City of St. Louis.

In a supplemental brief, defendant contends the trial court erred in using defendant's suspended imposition of sentence to enhance defendant's sentences. The trial court determined that defendant was a persistent offender under § 558.016.3, RSMo Supp.1984 (effective September 28, 1981). The statute defines a persistent offender as one "who has pleaded guilty to or has been found guilty of two or more felonies committed at different times." Section 558.016.3. The critical issue in determining if a defendant is a persistent offender is whether or not he has a conviction or a plea of guilty, not whether or not sentence was imposed. Thus, defendant's plea of guilty is sufficient for the purposes of the statute. *State v. Smith*, 650 S.W.2d 640 (Mo.App.1983). Therefore, the trial court properly applied the persistent offender statute to enhance defendant's sentence. The point is without merit.

In his final point presented in supplement brief, defendant charges that the prosecutor's closing statement contained an impermissible comment on appellant's failure to testify. The prosecutor, in his final argument stated as follows: "And I believe that the justice in this case is one in which you consider all the evidence and all the of—of the evidence there is in this case, the state's evidence. There's not one shred of evidence offered by the defense in this case." Section 546.270 RSMo 1978 prohibits comments by a prosecutor on a defend-

ant's failure to testify so as to safeguard the defendant's right against self-incrimination.

 When the statements made by the prosecutor do not contain direct and certain references to the failure of the defendant to testify, we will not interfere unless the record shows the trial court abused its discretion to the defendant's prejudice. *State v. Rothaus*, 530 S.W.2d 235 (Mo. banc 1975). Examination of the comments under attack reveal no direct and certain reference to the defendant's failure to testify. There was only a reference to the lack of evidence on behalf of the defendant. *State v. Inscore*, 592 S.W.2d 809 (Mo. banc 1980). Therefore, we find no error in the prosecutor's closing argument.

Judgment affirmed.

CRIST and SATZ, JJ., concur.